**Richard Lance McLAREN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–97–00651–CR.

Court of Appeals of Texas, El Paso.

Aug. 26, 1999.

Frank D. Brown, Alpine, for Appellant.

Albert G. Valadez, District Attorney, Fort Stockton, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

Richard Lance McLaren appeals his conviction for the offense of engaging in organized criminal activity. Finding legally insufficient evidence to support an element of the offense, we reverse and render a judgment of acquittal.

### FACTS

McLaren and his co-defendant, Robert "White Eagle" Otto, were charged with engaging in organized criminal activity stemming from the kidnaping of Joe and Margaret Ann Rowe on April 27, 1997. The Rowes lived in an area of Jeff Davis County, Texas known as the Davis Mountain Resort; McLaren also owned property in the resort, where he operated the Republic of Texas "embassy" from his house trailer.[1] Before the events at issue here, the Rowes had reported Republic of Texas activities (attended by persons toting assault weapons) to the Jeff Davis County Sheriff, which they believed led to the Republic's hostility towards them. McLaren circulated fliers around the resort designating the Rowes' home a "military target," and the Rowes had overheard McLaren on their radio scanner dispatching his "chief of security" to check out the Rowe home on several occasions.

On the morning of April 27, the Rowes reported to the sheriff's department a white van, which they had seen the day before carrying four persons with assault weapons. As a result, Sheriff Steve Bailey stopped the van's driver, Republic of Texas member Robert Scheidt, and ultimately arrested him. Shortly after this, three heavily-armed individuals drove up to the Rowes' house: Gregg Paulson, Karen Paulson, and Richard Keyes. Gregg Paulson fired three shots through the doorway, hitting Joe Rowe. The Paulsons and Keyes then forcibly entered the house, stating they were placing the Rowes under arrest.

Numerous law enforcement officials converged at the Rowe residence and began hostage negotiations with the Paulsons and Keyes. Throughout the day, they heard the Paulsons and Keyes talking with McLaren over the radio. McLaren told them at various times that they had "full authority to shoot," "please keep an eye out, infrared photography lenses tonight," "missile crew two, go to closed frequency," and "base to all units, we've had an infrared sighting. Go to full alert." McLaren gave interviews to members of the press from the Republic of Texas "embassy" as the group's spokesperson. McLaren also negotiated with law enforcement officials on behalf of the Republic of Texas. The Texas Rangers successfully negotiated the Rowes' release at 10 p.m. There is no

---

1. The Republic of Texas is a militia-type organization whose members believe that Texas is a sovereign nation never legally annexed by the United States. McLaren styles himself Chief Ambassador and Consul General of the Republic of Texas.

evidence that McLaren was ever actually present at the Rowes' residence at any time during their ordeal.

## STANDARD OF REVIEW

█ In reviewing the sufficiency of the evidence to support a conviction, we measure the evidence against the elements of the offense as defined by a hypothetically correct jury charge.[2] A hypothetically correct charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[3] Moreover, in passing on legal sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[4] We do not resolve conflicts of fact or assign credibility to witnesses, as it was the jury's function to accept or reject any, part, or all of any witness's testimony.[5] Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict.[6] We resolve any inconsistencies in the evidence in favor of the verdict.[7]

## The Elements of Organized Criminal Activity

█ In his first issue on appeal, McLaren contends that the State failed to prove the "overt act" element of the offense of organized criminal activity, and that therefore he is entitled to a reversal and rendition of acquittal. The elements of organized criminal activity[8] are: (1) a person; (2) with intent to establish, maintain, or participate in a combination; (3) commits or conspires to commit; (4) a listed offense, here aggravated kidnaping.[9] A "combination" means three or more persons who collaborate in carrying on criminal activities.[10] "Conspiracy to commit" means an agreement with one or more persons that they or one or more of them will engage in conduct that would constitute the offense and the defendant and one or more of the others perform an overt act in pursuance of the agreement. An agreement may be inferred from the acts of the parties.[11] To be guilty of organized criminal activity, the defendant must himself perform some overt act in furtherance of criminal act,[12] but the overt act need not be criminal itself.[13] The overt act is an element of the offense and must be included in the indictment[14] and reflected in the charge.[15]

2. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997).

3. *Id.*

4. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57, 159 (Tex.Crim.App.1991).

5. *See Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

6. *Adelman,* 828 S.W.2d at 421–22.

7. *Matson,* 819 S.W.2d at 843 (quoting *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988)).

8. Tex. Penal Code Ann. § 71.02 (Vernon 1994).

9. *Id.; State v. Duke,* 865 S.W.2d 466, 467 (Tex.Crim.App.1993).

10. Tex. Penal Code Ann. § 71.01 (Vernon 1994); *Brosky v. State,* 915 S.W.2d 120, 130 (Tex.App.—Fort Worth 1996, pet. ref'd).

11. Tex. Penal Code Ann. § 71.01 (Vernon 1994); *Brosky,* 915 S.W.2d at 130.

12. *Barber v. State,* 764 S.W.2d 232, 235 (Tex. Crim.App.1988).

13. *Id.*

14. *Chambless v. State,* 748 S.W.2d 251, 253 (Tex.App.—Tyler 1988, no pet.); *Abbett v. State,* 694 S.W.2d 534, 538 (Tex.App.—Corpus Christi 1984), *pets. dism'd, improvidently granted,* 811 S.W.2d 604 (Tex.Crim.App. 1991).

15. *See Malik,* 953 S.W.2d at 241.

## The Indictment and Charge

McLaren was charged with engaging in organized criminal activity for his role in the kidnaping of the Rowes. His indictment read:

RICHARD LANCE McLAREN, hereafter styled the Defendant, heretofore on or about APRIL 27, 1997, and anterior to the presentment of this indictment, did then and there, with the intent to establish, maintain, and participate in a combination and in the profits of a combination, said combination consisting of the defendant and GREGG PAULSON, KAREN PAULSON, RICHARD F. KEYES III and ROBERT "WHITE EAGLE" OTTO who collaborated in carrying on the hereinafter described criminal activity, conspire to commit the offense of Aggravated Kidnapping by agreeing with each other that they would engage in conduct that constituted said offense, and the defendant and GREGG PAULSON, KAREN PAULSON, RICHARD F. KEYES III, and ROBERT "WHITE EAGLE" OTTO *performed an overt act in pursuance of said agreement, to-wit: abduct JOE AND MARGARET ANN ROWE with the intent to use them as hostages....* (Italics emphasis added).

The application paragraph of the jury charge was consistent with the indictment. It read:

Now, if you find from the evidence beyond a reasonable doubt the defendant, RICHARD LANCE MCLAREN, on or about the 27th day of April, 1997 in Jeff Davis County, Texas, did then and there with the intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of the defendant and GREGG PAULSON, KAREN PAULSON, RICHARD F. KEYES III and ROBERT "WHITE EAGLE" OTTO, who collaborated in carrying on the hereinafter described criminal activity, conspire to commit the offense of Aggravated Kidnapping, by agreeing with each other that they would engage in conduct that constituted said offense, and the defendant and GREGG PAULSON, KAREN PAULSON, RICHARD F. KEYES III or ROBERT "WHITE EAGLE" OTTO *performed an overt act in pursuance of said agreement, to-wit: abduct JOE AND MARGARET ANN ROWE with the intent to use them as hostages,* then you will find the defendant guilty of Engaging in Organized Criminal Activity, as alleged in the indictment, and so state by your verdict.

## Sufficiency of the Evidence to Support Overt Act

■ Thus, the overt act alleged against Richard McLaren in this case was that he "abduct[ed] Joe and Margaret Ann Rowe with the intent to use them as hostages...." After perusing the record, we agree there is no evidence McLaren ever abducted Joe and Margaret Ann Rowe, whatever his role in the Republic of Texas might have been.

"Abduct" means to restrain persons with intent to prevent their liberation by: (A) secreting them in a place where they are not likely to be found; or (B) using or threatening to use deadly force.[16] The evidence in this case is that Gregg and Karen Paulson and Richard Keyes abducted Joe and Margaret Ann Rowe by using and threatening to use deadly force. The evidence is also that Richard McLaren was in radio contact with the abductors during the kidnaping, that he made a number of incendiary statements during these communications, that he gave interviews to the press as their spokesperson, and that he negotiated with law enforcement officers for the release of a Republic of Texas member in exchange for the Rowes. There is simply no evidence, however, that McLaren was a direct participant in the abduction: the State having chosen to name this as the overt act McLaren per-

16. TEX. PENAL CODE ANN. § 20.01(2) (Vernon 1994).

formed, it was obligated to present evidence that he restrained the Rowes by force or threat of force. Having failed to do so, there was no evidence of the overt act as alleged. Without evidence of the overt act, the evidence was insufficient to prove the offense of organized criminal activity.

■ The State counters that once it established an agreement to commit aggravated kidnaping, then the acts of the Paulsons and Keyes were equally attributable to all members of the combination and McLaren was therefore equally liable for the abduction under the law of parties. In support of this argument, the State relies on *Pike v. State*.[17] The case is not on point. Although *Pike* was an organized criminal activity case involving a methamphetamine enterprise, the discussion upon which the State relies involves the admission of evidence. Harold and James Pike were brothers involved in drug manufacture and distribution, in the course of which Harold provided two minors with methamphetamine in exchange for sex. James contended that this evidence was overly prejudicial to him, and should have been excluded. The court held that:

> Once the evidence established a conspiracy, acts done by the Pikes in furtherance of the conspiracy were attributable to each conspirator, and the co-conspirators were equally liable for these acts.[18]

We do not disagree with this statement, but the *Pike* court was clearly speaking of admission of evidence, not proving an element of the offense. Here, many acts by other members of the Republic of Texas were in evidence, were relevant, and were properly before the jury. Much of this evidence was relevant to establish an agreement, the illegality of the agreement's goal, and the overt acts of other parties in furtherance of the agreement, all of which are elements of the charged offense. This evidence did not, however, establish McLaren's specific overt act in furtherance of the enterprise as alleged by the State.

■ We cannot hold that any overt act by any member of the criminal combination is attributable to all its members under the law of parties. If this were so, it would effectively eliminate the "overt act" element from the offense, as any single act by any individual would suffice as the overt acts of all. This is true in a conspiracy case,[19] but not in an organized criminal conspiracy prosecution. As the Court of Criminal Appeals has explained:

> A person may be guilty of criminal conspiracy by doing nothing more than agreeing to participate in the conspiracy, as long as another conspirator commits some overt act in furtherance of the conspiracy. But to commit the offense of engaging in organized criminal activity, the actor must not only agree to participate *but must himself perform some overt act* in pursuance of that agreement. (Emphasis added).[20]

The heightened participation requirement is one element distinguishing criminal conspiracy from engaging in organized criminal conspiracy. Having chosen to indict McLaren for engaging in organized criminal activity, and having chosen to allege a single overt act which it did not prove, the State cannot now rely on a theory of criminal responsibility foreign to the offense it chose to prosecute. The law of parties is a separate, and inapplicable, doctrine.[21]

**17.** 758 S.W.2d 357, 362 (Tex.App.—Waco 1988), *vacated and remanded*, 772 S.W.2d 130 (Tex.Crim.App.1989) (remanding to court of appeals for consideration of supplemental record), 788 S.W.2d 43 (Tex.App.—Waco 1990, pet. ref'd).

**18.** *Id.*

**19.** Tex. Penal Code Ann. § 15.02 (Vernon 1994).

**20.** *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim.App.1988).

**21.** *See Childress v. State*, 807 S.W.2d 424, 435 (Tex.App.—Amarillo 1991, no pet.) ("There is no need for a charge on the law of parties to establish criminal liability, for such liability is

**600**

## CONCLUSION

The evidence was legally insufficient to support a conviction for engaging in organized criminal activity, as there was no showing that McLaren abducted Joe and Margaret Ann Rowe. McLaren's issue number one is sustained, and we therefore find it unnecessary to reach his other issues on appeal. We reverse the conviction and render a judgment of acquittal.

based on the act of agreement, the illegal purpose of the agreement, and an overt act by the accused and one or more of the other members of the combination.")