Robert CAMPBELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–99–152 CR.

Court of Appeals of Texas, Beaumont.

Submitted March 16, 2000.

Decided June 21, 2000.

Cynthia Viol, Texas Dept. of Crim. Justice-State Counsel for Offenders, Huntsville, for appellant.

Mark Mullin, Special Prosecution Unit, Huntsville, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Robert Campbell was tried on an indictment that alleged Campbell and eight other individuals murdered another with the intent to establish, maintain, or participate in a combination or in the profits of a combination.. TEX. PEN.CODE ANN. § 19.03(a)(5)(B) (Vernon 1994). The indictment against Campbell, Thomas Arm-

strong, and Stephen Brumfield was presented to a jury in a joint trial in which the three men were convicted of capital murder and sentenced to confinement for life in the Texas Department of Criminal Justice, Institutional Division.[1] The judgment reflects the life sentence shall be served consecutively to the forty year sentence Campbell was serving at the time of the offense. Campbell raises four issues on appeal.

In his first point of error, Campbell contends the evidence is legally insufficient to support the conviction because the State failed to prove that Campbell caused the death of Ryan Osgood with the intent to establish, maintain, or participate in a group of three or more persons who collaborate in carrying on criminal activities. Campbell relies upon a recent opinion of the Court of Criminal Appeals, which we find to be factually distinguishable because the prosecution in the case before us adduced evidence of a continuing course of criminal activity absent in that case. *See Nguyen v. State*, 1 S.W.3d 694 (Tex.Crim. App.1999).

Terrell Unit cellmates Ryan Osgood and Marc Ashbrook were members of the White Knights, a penitentiary gang. Campbell, Brumfield, Armstrong, Daniel Bean, Michael Bingham, Clyde Haynes, Bobby Stephens, Troy Smith, and Shane Jaggers were all members of the Aryan Circle who were housed in the same row as Osgood and Ashbrook.[2] The Aryan Circle is a penitentiary gang engaged in activities involving "a little bit of everything, extortion, prostitution, drugs."

On September 12, 1997, Osgood attacked Terry Rayborn, the vice-president of the Aryan Circle and the highest ranking Aryan Circle member in the penitentiary at that time. Ashbrook testified he and Campbell had a conversation, and "they expressed concern about the incident and possible solutions, and Ashbrook "told them that it should be over with." On October 6, 1997, after some twenty-one days of lockdown, during which the inmates were not permitted out of their cells, the doors to the entire row of cells opened and all the inmates were ordered to exit their cells for dinner. On cross-examination, Armstrong testified:

> [T]he rumor was that Ryan Osgood had attempted to harm another inmate, an A.C. member, and then they retaliated. There were some retaliations on the other side of the unit, and they locked all of the close custody up. I guess they figured we was going to do something, too. Then they put Osgood over there and he was laughing about it and such and such and such and such; and I figured since Rayborn didn't get got like they wanted him to, they were going to try to harm him again. And there was—it was just normal tension. If two groups get into a riot fight situation like that, there's going to be tension.

Ashbrook walked out ahead of Osgood and was halfway down the stairs to the dayroom when he realized Osgood was not behind him. When Ashbrook reached the bottom, he turned around and saw Campbell and Brumfield run to Osgood and attack him. Brumfield grabbed Osgood's arms while Campbell stabbed Osgood five times with a piece of sharpened plexiglass. While not fatal, the loss of blood associated with the stab wounds contributed to Osgood's death. Then Campbell, Armstrong,

---

**1.** Armstrong's and Brumfield's convictions were affirmed in appeals decided today. *See Armstrong v. State*, 18 S.W.2d 928 (Tex.App.—Beaumont 2000, no pet. h.); *Brumfield v. State*, 18 S.W.3d 921, (Tex.App.—Beaumont 2000, no pet. h.).

**2.** These individuals were charged with capital murder in the same indictment as Campbell, Armstrong, and Brumfield, but were not tried in the same proceeding.

and Bean stomped on Osgood. Meanwhile, in an attempt to support Osgood, Ashbrook fought Stephens, then Smith, Jaggers, and Haynes as well. Brumfield and Armstrong left Osgood and pursued Ashbrook, who dropped from the second floor to the ground floor. Brumfield, Armstrong, Jaggars and Haynes fought Ashbrook in the day room until prison personnel shot chemical agents into the area. Campbell went into his cell, then returned to Osgood and kicked and stomped on Osgood's head. The pathologist attributed cause of death to the cerebral contusion with subgluteal and subdural hemorrhage due to blunt trauma of the head.

According to Ashbrook, Osgood's "disrespectful" attack on Rayborn was the motive for the attack on Osgood. According to Armstrong, Osgood's "people ... were supposed to take care of it" but did not because of the lockdown. According to Stephens, Osgood "tried to take our vice-president" .... [s]o, we had to get back— we had to get back at him for doing that." Stephens testified a message, or "kite," had passed among the inmates, and that as a result he expected either Campbell and Brumfield or Smith and Richard Shosa would have "problems" with Ashbrook and Osgood when they walked by,"[b]ecause they were White Knights." According to Jaggers, in the organizations in prison, it is "pretty much" literally "an eye for an eye." Asked, "so if somebody attacks one of your guys, you respond in kind?", Jaggars replied, "Most of the time."

◼ Campbell argues the State failed to prove the Aryan Circle was a "combination" "of three or more persons who collaborate in carrying on criminal activities." *See* TEX. PEN.CODE. ANN. § 71.01 (Vernon Supp.2000). The testimony just described established three or more people associated as the "Aryan Circle" and those people collaborated in the homicidal assault on Ryan Osgood. The gang-related motive established for the attack was directly related to the cultivation of deference for Aryan Circle members among the prison population. Although the inmates depicted their respective gangs as helpful"brotherhoods" or "tribes" organized for "mutual protection," that the members of the Aryan Circle collaborated in a continuing course of criminal conduct is supported by testimony that the Aryan Circle was involved in extortion, prostitution, and drugs. Regarding other criminal offenses, one indicted Aryan Circle member testified, "the Aryan Circle used him [another inmate not involved in the attack] as far as extortion. We extorted money from him. He paid us for protection .... [from] any problems that he might have as far as somebody trying to fight him." Armstrong admitted that to "blood in" to the Aryan Circle, a man could "take a case for an A.C. member." Stephens testified, "The Aryan Circle had put a hit on me" and that his and his wife's lives were in danger from the Aryan Circle because he testified. Campbell's agreement to work with the other members of the Aryan Circle in the gang's continuing course of criminal activity is proven by Campbell's conduct in the commission of the murder of Ryan Osgood.

Considering all of the evidence adduced at trial in the light most favorable to the prosecution, we hold a rational trier of fact could have found beyond a reasonable doubt that the State proved beyond a reasonable doubt that Campbell possessed the specific intent to establish, maintain, or participate in a group of three or more persons who collaborate in carrying on criminal activities. Point of error one is overruled.

◼ Point of error two urges the trial court erred in denying Campbell's motion for new trial based upon jury misconduct. The motion for new trial alleged "misconduct of the jury, to wit: The jurors

reached their verdict improperly prior to the receipt of all of the evidence in the case.... One juror improperly placed the burden on the Defendant to prove his innocence...." The motion for new trial does not allege the jury considered Campbell's failure to testify as a circumstance against the accused.

■ In the motion for new trial hearing, defense counsel asked juror F.B. if there was any discussion of the defendants' failure to testify. F.B. replied, "No. We might have said something that they didn't—they didn't testify, but that was the extent of it." Juror A.E. agreed the subject probably came up in conversation during deliberations, but that he took into account the judge's instructions "not to hold that against the defendant." Juror B.H. did not recall if the subject arose, but recalled and stated he followed the judge's instruction to not consider the defendants' failure to testify. A mere reference by jurors to the fact that a defendant did not testify does not amount to reversible error. *Powell v. State*, 502 S.W.2d 705, 711 (Tex. Crim.App.1974). To constitute reversible error, the reference must amount to a discussion by the jurors or have been used as a circumstance against the accused. *Id.* Such is not the case here.

■ Far more disturbing is the testimony of F.B. regarding her personal opinions. Defense counsel asked, "You believe that we should have proved our client, Mr. Robert Campbell, innocent?" F.B. replied, "I believe that was your intention." F.B. agreed with the prosecutor's statement that the State's evidence was "pretty compelling." The prosecutor asked, "Once you heard all of that, if the defense had put on something that showed there was another side and that they weren't guilty, would you have found the defendants not guilty?" F.B. replied, "That's right. I would have." F.B. agreed the State's evidence was sufficient to prove the defendants guilty, and

that if it had not been, she would have said not guilty, but she never heard any evidence to sway her that way. On redirect, defense counsel asked, "You believe that the defendants should have testified?" F.B. replied, "I do." Defense counsel asked, "And the fact that he didn't, that Mr. Brumfield and Mr. Campbell didn't testify, that affected your verdict, didn't it?" F.B. replied, "Yes."

F.B.'s testimony in the motion for new trial hearing is quite similar to that found to be reversible jury misconduct in *Reyna v. State*, 846 S.W.2d 498, 502–03 (Tex. App.—Corpus Christi 1993, no pet.)("In deliberating on the verdict, we took into consideration that the defendant did not testify on his own behalf. I think he should have testified. I feel he should have spoken up and defended himself.") Placed in context, however, it is not clear whether F.B. was considering the effect of the defendant's failure to testify in retrospect rather than admitting that she considered Campbell's failure to testify as a circumstance against him in deciding whether he was guilty. F.B. testified she voted in favor of guilt because the State's evidence, which included a videotape recording of Campbell stomping on Osgood, was sufficient to prove the defendant's guilt. She also testified that she considered all of the evidence that came in, and decided after all of the evidence was presented, thus refuting Campbell's alleged basis for jury misconduct.

The trial court determined, on conflicting evidence, that the alleged misconduct did not in fact occur. Accordingly, the denial of the motion for new trial was within the trial court's discretion. Point of error two is overruled.

■ Point of error three contends the trial court erred in instructing the jury on the law of parties over defense objection. Campbell relies upon a recent Court of Appeals opinion that held that for the evi-

dence in a prosecution for engaging in organized criminal activity to be legally sufficient, the State must prove the appellant himself performed an overt act in furtherance of a criminal act. *McLaren v. State,* 2 S.W.3d 595 (Tex.App.—El Paso 1999, pet. granted). In *McLaren* there was no evidence that the appellant was a direct participant in the underlying abduction. *Id.* at 598. The Court of Appeals reasoned that the State could not rely upon the overt acts of the other members of the combination to prove the appellant's guilt under the law of parties. *Id.* at 599. Campbell contends the law of parties is not applicable to a prosecution for capital murder under Section 19.03(a)(5)(B) because the offense contains a "combination" element identical to that of engaging in organized criminal activity.

The application paragraph authorized the jury to convict if it found Campbell "acting alone or as a party, as defined herein, *did, while* incarcerated in a penal institution, namely, the Terrell Unit, *and with* intent to establish, maintain, or participate in a combination consisting of, but not limited to [the indicted persons], intentionally or knowingly *cause the death* of Ryan Osgood . . . ." [emphasis added] The trial court also instructed the jury separately on the requirements of a combination and on the law of parties.

Contrary to the State's position in *McLaren,* in this case the State is not relying on the acts of co-defendants to supply the proof that the appellant conspired to commit the underlying offense. The gerund phrase in the application paragraph "acting alone or as a party" modified "Robert Campbell"; the affected verb phrase is "did . . . cause the death." The parties charge in this case applied to the defendant's acts causing the death of Ryan Osgood by stomping, kicking, hitting, and stabbing, not to the fact of incarceration or to the intent to participate in a combination. "While incarcerated in a pe-

nal institution . . . "and with the intent to establish, maintain, or participate in a combination" are parenthetical phrases that are not modified by the phrase referring to criminal responsibility as a party to the offense. The jury was authorized to convict Campbell only if it found that he murdered Osgood while either acting alone or as a party, and that Campbell was then incarcerated in the Terrell Unit and intended to participate in a combination.

We hold the trial court did not err in submitting to the jury an instruction on the law of parties. *See* TEX. PEN.CODE ANN. § 7.02(a) (Vernon 1994). Point of error three is overruled.

■ Point of error four urges Texas Penal Code Section 19.03(a)(5)(B) is unconstitutionally vague under the Fifth and Fourteenth Amendments to the United States Constitution. The test to determine if a statute is so vague as to violate due process is whether it (1) gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) provides explicit standards for those who apply it. *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222, 227–28 (1972).

■ Campbell argues that in *Nguyen* the Court of Criminal Appeals defined the "combination" element of engaging in organized criminal activity as a continuing course of conduct; therefore, Section 19.03(a)(5)(B) prohibits the commission of murder with the intent to commit undefined, contingent, criminal activities in the future. We disagree with the appellant's construction of the statute. As the Court of Criminal Appeals made perfectly clear in the context of prosecutions for engaging in organized criminal activity in *Nguyen,* it is the *present intent* to commit a continuing series of criminal acts, *not* the actual commission of a series of criminal offenses, that the State must prove in order to

secure a conviction. *See Nguyen*, 1 S.W.3d at 697. Likewise, to secure a conviction for capital murder under Section 19.03(a)(5)(B), the State must prove that the accused committed the murder with the present intent to commit a continuing series of criminal acts. Being a matter of specific intent, the capital element of the offense cannot be supplied through inadvertent conduct.

 We also reject Campbell's argument that Section 19.03(a)(5)(B) encourages arbitrary prosecution. The appropriateness of the aggravating circumstance is evident in this case: Campbell is a tattooed member of a race-based penitentiary gang that employs physical violence, in this case murder, to protect its members. Confined where they do not have access to weapons, Campbell and eight other gang members used their hands and feet and sharpened plexiglass to kill a rival gang member in retaliation for his attack on one of their own. The State, having incarcerated serious offenders, has a compelling interest in preventing further criminal conduct on their part, especially where a threat to the safety of those confined is involved and where the impetus for the crime is control over other inmates. Since the State must prove the accused committed the murder with the intent to participate in a combination, the State cannot apply the statute arbitrarily to offending inmates coincidentally affiliated with an organized gang.

Section 19.03(a)(5)(B) both reasonably informs citizens of the proscribed conduct and provides adequate guidelines for enforcement. We hold Penal Code Section 19.03(a)(5)(B) is not unconstitutionally vague. Point of error four is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.