Thomas ARMSTRONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–99–153 CR.

Court of Appeals of Texas, Beaumont.

Submitted March 16, 2000.

Decided June 21, 2000.

Cynthia Viol, Texas Dept. of Criminal Justice, State Counsel for Offenders, Huntsville, for appellant.

Mark Mullin, Special Prosecution Unit, Huntsville, for State.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Thomas Armstrong was brought to trial on an indictment that alleged Armstrong and eight other individuals murdered another with the intent to establish, maintain, or participate in a combination or in the profits of a combination. TEX. PEN. CODE ANN. § 19.03(a)(5)(B). The indictment against Armstrong, Robert Campbell, and Stephen Brumfield was presented to a jury in a joint trial in which the three men were convicted of capital murder and sentenced to confinement for life in the Texas Department of Criminal Justice, Institutional Division.[1] The judgment reflects the life sentence shall be served consecutively to the ten year sentence Armstrong was serving at the time of the offense. Armstrong raises three issues on appeal.

In his first point of error, Armstrong contends the evidence is legally insufficient to support the conviction because the State failed to prove that Armstrong caused the death of Ryan Osgood with the intent to establish, maintain, or participate in a group of three or more persons who collaborate in carrying on criminal activities. Armstrong relies upon a recent opinion of the Court of Criminal Appeals, which we find to be factually distinguishable because the prosecution in the case before us adduced evidence of a continuing course of criminal activity absent in that case. *See*

*Nguyen v. State*, 1 S.W.3d 694 (Tex.Crim. App.1999).

Terrell Unit cellmates Ryan Osgood and Marc Ashbrook were members of the White Knights, a penitentiary gang. Armstrong, Campbell, Brumfield, Daniel Bean, Michael Bingham, Clyde Haynes, Bobby Stephens, Troy Smith, and Shane Jaggers were all members of the Aryan Circle who were housed in the same row as Osgood and Ashbrook.[2] The Aryan Circle is a penitentiary gang engaged in activities involving "a little bit of everything, extortion, prostitution, drugs."

At trial, Armstrong admitted there had been what he called "hostilities" between the White Knights and the Aryan Circle. On September 12, 1997, Osgood attacked Terry Rayborn, the vice-president of the Aryan Circle and the highest ranking Aryan Circle member in the penitentiary at that time. On October 6, 1997, after some twenty-one days of lockdown, during which the inmates were not permitted out of their cells, the doors to the entire row of cells opened and all the inmates were ordered to exit their cells for dinner. On cross-examination, Armstrong testified:

> [T]he rumor was that Ryan Osgood had attempted to harm another inmate, an A.C. member, and then they retaliated. There were some retaliations on the other side of the unit, and they locked all of the close custody up. I guess they figured we was going to do something, too. Then they put Osgood over there and he was laughing about it and such and such and such and such; and I figured since Rayborn didn't get got like they wanted him to, they were going to try to harm him again. And there

---

1. Campbell's and Brumfield's convictions were affirmed in appeals decided today. *See Campbell v. State*, 18 S.W.2d 914 (Tex.App.— Beaumont 2000, no pet. h.); *Brumfield v. State*, 18 S.W.2d 921 (Tex.App.—Beaumont 2000, no pet. h.).

2. These individuals were charged with capital murder in the same indictment as Armstrong, Campbell, and Brumfield, but were not tried in the same proceeding.

was—it was just normal tension. If two groups get into a riot fight situation like that, there's going to be tension.

Ashbrook testified he and Campbell had previously had a conversation, and "they expressed concern about the incident and possible solutions," and Ashbrook "told them that it should be over with." According to Ashbrook, Osgood's "disrespectful" attack on Rayborn was the motive for the attack on Osgood. Ashbrook walked out ahead of Osgood and was halfway down the stairs to the dayroom when he realized Osgood was not behind him. When Ashbrook reached the bottom, he turned around and saw Campbell and Brumfield run to Osgood and attack him. Brumfield grabbed Osgood's arms and Campbell stabbed Osgood. Then Bean and Armstrong ran up behind Osgood and joined in the attack, hitting Osgood, who was already on the ground. Ashbrook ran back up the stairs, and ran into Stephens, who tried to grab Ashbrook to keep him from reaching Osgood. Ashbrook and Stephens started fighting, then Smith, Jaggers, and Haynes joined in the attack on Ashbrook. Brumfield and Armstrong left Osgood and pursued Ashbrook, who dropped from the second floor to the ground floor. Brumfield, Armstrong, Jaggars and Haynes fought Ashbrook in the day room until prison personnel shot chemical agents into the area. Armstrong ran up to the third level to Campbell and Osgood. Several witnesses testified they saw Armstrong stomping on Osgood, and Armstrong admitted to stomping on Osgood once. Armstrong also admitted to attacking Ashbrook, in Armstrong's words "immobilized" him; Armstrong claimed he did so in order to help Stephens beat up Ashbrook because, "it's just your instinct to jump in, help one of your own." Armstrong admitted he walked up to "the body," and claimed "I was mad and I got my one lick." Asked if it was disrespectful for Osgood to jump on his vice president,

Armstrong replied it was disrespectful for Osgood to jump on "anybody." The following was elicited on cross-examination:

Q. [By prosecutor] And what is supposed to happen? How does it normally work when someone disrespects an Aryan Circle member?

A. [By Armstrong] At first we take—his people, his friends, as he called them, as Ashbrook called them, were supposed to take care of it. They didn't have a chance to do it. So, therefore, there was no definite conclusion what was going to happen.

Q. How come they didn't have a chance?

A. Because he was put in solitary after the incident and then put on lockdown.

According to Stephens, Osgood "tried to take our vice-president" .... [s]o, we had to get back—we had to get back at him for doing that." Stephens testified a message, or "kite," had passed among the inmates, and that as a result he expected either Campbell and Brumfield or Smith and Richard Shosa would have "problems" with Ashbrook and Osgood when they walked by, "[b]ecause they were White Knights." According to Jaggers, in the organizations in prison, it is "pretty much" literally "an eye for an eye." Asked, "so if somebody attacks one of your guys, you respond in kind?", Jaggars replied, "Most of the time."

■ Armstrong argues the State failed to prove the Aryan Circle was a "combination" "of three or more persons who collaborate in carrying on criminal activities." TEX. PEN.CODE. ANN. § 71.01 (Vernon Supp. 2000). The testimony just described established three or more people associated as the "Aryan Circle" and those people collaborated in the homicidal assault on Ryan Osgood. The gang-related motive established for the attack was directly re-

lated to the cultivation of deference for Aryan Circle members among the prison population. Although the inmates depicted their respective gangs as helpful "brotherhoods" or "tribes" organized for "mutual protection," that the members of the Aryan Circle collaborated in a continuing course of criminal conduct is supported by testimony that the Aryan Circle was involved in extortion, prostitution, and drugs. Regarding other criminal offenses, one indicted Aryan Circle member testified, "the Aryan Circle used him [another inmate not involved in the attack] as far as extortion. We extorted money from him. He paid us for protection .... [from] any problems that he might have as far as somebody trying to fight him." Armstrong admitted that to "blood in" to the Aryan Circle, a man could "take a case for an A.C. member." Stephens testified, "The Aryan Circle had put a hit on me" and that his and his wife's lives were in danger from the Aryan Circle because he testified. Although Armstrong depicted the Aryan Circle as an altruistic association devoted "for white instead of destroying them," that Armstrong agreed to work with the other members of the Aryan Circle in the gang's continuing course of criminal activity is proven by Armstrong's conduct in the commission of the murder of Ryan Osgood.

Considering all of the evidence adduced at trial in the light most favorable to the prosecution, we hold a rational trier of fact could have found beyond a reasonable doubt that the State proved beyond a reasonable doubt that Armstrong possessed the specific intent to establish, maintain, or participate in a group of three or more persons who collaborate in carrying on criminal activities. Point of error one is overruled.

■ Point of error two contends the trial court erred in instructing the jury on the law of parties over defense objection.

Armstrong relies upon a recent Court of Appeals opinion that held that for the evidence in a prosecution for engaging in organized criminal activity to be legally sufficient, the State must prove the appellant himself performed an overt act in furtherance of a criminal act. *McLaren v. State*, 2 S.W.3d 595 (Tex.App.—El Paso 1999, pet. granted). In *McLaren* there was no evidence that the appellant was a direct participant in the underlying abduction. *Id.* at 598. The Court of Appeals reasoned that the State could not rely upon the overt acts of the other members of the combination to prove the appellant's guilt under the law of parties. *Id.* at 599. Armstrong contends the law of parties is not applicable to a prosecution for capital murder under Section 19.03(a)(5)(B) because the offense contains a "combination" element identical to that of engaging in organized criminal activity.

The application paragraph authorized the jury to convict if it found Armstrong "acting alone or as a party, as defined herein, *did, while* incarcerated in a penal institution, namely, the Terrell Unit, *and with* intent to establish, maintain, or participate in a combination consisting of, but not limited to [the indicted persons], intentionally or knowingly *cause the death* of Ryan Osgood ...." [emphasis added] The trial court also instructed the jury separately on the requirements of a combination and on the law of parties.

Contrary to the State's position in *McLaren*, in this case the State is not relying on the acts of co-defendants to supply the proof that the appellant conspired to commit the underlying offense. The gerund phrase in the application paragraph "acting alone or as a party" modified "Thomas Armstrong"; the affected verb phrase is "did ... cause the death." The parties charge in this case applied to the defendant's acts causing the death of Ryan Osgood by stomping, kicking, hitting, and stabbing, not to the fact of incarcera-

tion or to the intent to participate in a combination. "While incarcerated in a penal institution ... and with the intent to establish, maintain, or participate in a combination" are parenthetical phrases that are not modified by the phrase referring to criminal responsibility as a party to the offense. The jury was authorized to convict Armstrong only if it found that he murdered Osgood while either acting alone or as a party, and that Armstrong was then incarcerated in the Terrell Unit and intended to participate in a combination.

We hold the trial court did not err in submitting to the jury an instruction on the law of parties. *See* TEX. PEN.CODE ANN. § 7.02(a) (Vernon 1994). Point of error two is overruled.

■ Point of error three urges Texas Penal Code Section 19.03(a)(5)(B) is unconstitutionally vague under the Fifth and Fourteenth Amendments to the United States Constitution. The test to determine if a statute is so vague as to violate due process is whether it (1) gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and (2) provides explicit standards for those who apply it. *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222, 227–28 (1972).

■ Armstrong argues that in *Nguyen* the Court of Criminal Appeals defined the "combination" element of engaging in organized criminal activity as a continuing course of conduct; therefore, Section 19.03(a)(5)(B) prohibits the commission of murder with the intent to commit undefined, contingent, criminal activities in the future. We disagree with the appellant's construction of the statute. As the Court of Criminal Appeals made perfectly clear in the context of prosecutions for engaging in organized criminal activity in *Nguyen,* it is the *present intent* to commit a continuing series of criminal acts, *not* the actual commission of a series of criminal offenses,

that the State must prove in order to secure a conviction. *See Nguyen,* 1 S.W.3d at 697. Likewise, to secure a conviction for capital murder under Section 19.03(a)(5)(B), the State must prove that the accused committed the murder with the present intent to commit a continuing series of criminal acts. Being a matter of specific intent, the capital element of the offense cannot be supplied through inadvertent conduct.

■ We also reject Armstrong's argument that Section 19.03(a)(5)(B) encourages arbitrary prosecution. The appropriateness of the aggravating circumstance is evident in this case: Armstrong is a tattooed member of a race-based penitentiary gang that employs physical violence, in this case murder, to protect its members. Confined where they do not have access to weapons, Armstrong and eight other gang members used their hands and feet and sharpened plexiglass to kill a rival gang member in retaliation for his attack on one of their own. The State, having incarcerated serious offenders, has a compelling interest in preventing further criminal conduct on their part, especially where a threat to the safety of those confined is involved and where the impetus for the crime is control over other inmates. Since the State must prove the accused committed the murder with the intent to participate in a combination, the State cannot apply the statute arbitrarily to offending inmates who coincidentally belong to an organized gang.

Section 19.03(a)(5)(B) both reasonably informs citizens of the proscribed conduct and provides adequate guidelines for enforcement. We hold Penal Code Section 19.03(a)(5)(B) is not unconstitutionally vague. Point of error three is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.