Richard Lance McLAREN, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–97–00651–CR.

Court of Appeals of Texas, El Paso.

April 10, 2003.

Mike Barclay, Alpine, for appellant.

Frank D. Brown, District Attorney, Alpine, for appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Richard Lance McLaren was indicted for engaging in organized criminal activity by conspiring to commit the aggravated

kidnaping of Joe and Margaret Ann Rowe. The State alleged that McLaren performed the overt act of abducting the Rowes in pursuance of the conspiracy. McLaren was convicted by a jury and sentenced by the trial court to ninety-nine years' confinement. On appeal, we held that there was no evidence that McLaren performed the overt act of abducting the Rowes. *See McLaren v. State*, 2 S.W.3d 595, 598–99 (Tex.App.-El Paso 1999), *rev'd sub nom. Otto v. State*, 95 S.W.3d 282 (Tex.Crim.App.2003). We therefore reversed the conviction and rendered a judgment of acquittal. *Id.* at 600.

The Court of Criminal Appeals subsequently reversed our judgment, holding that the State was not required to prove that McLaren abducted the Rowes. *See Otto v. State*, 95 S.W.3d 282, 284–85 (Tex. Crim.App.2003). The court remanded the cause for us to consider the remaining issues raised by McLaren in his appeal to this Court. *Id.* at 285. Finding no reversible error regarding those issues, we affirm.

### Factual Background

McLaren is the "ambassador" of the "Republic of Texas," a militia-type organization whose members believe that Texas is a sovereign nation that was never legally annexed by the United States. *McLaren*, 2 S.W.3d at 596 n. 1. There was animosity between the Republic of Texas and the Rowes because the Rowes had reported the group's activities to the county sheriff. *Id.* at 596. One of their reports to the sheriff apparently resulted in the arrest of a member of the group. *Id.* Shortly after the arrest, three Republic of Texas members forcibly entered the Rowes' house and held them captive. *Id.* The kidnappers eventually relinquished control of the Rowes' house and left the Rowes there. It is undisputed that McLaren was not present at the Rowes' house during the kidnaping. *Id.* at 596–97.

### Prosecutors' Argument

■ McLaren contends that the trial court erred by allowing the prosecutors to argue that the jury could consider the law of parties, because the law of parties was not included in the jury charge. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex.Crim. App.1990) ("[I]t is error for the State to present a statement of the law that is contrary to that presented in the charge to the jury.").

We believe the Court of Criminal Appeals' decision in this case requires us to reject McLaren's contention. The court held that McLaren's "involvement in the planning, execution, and aftermath of the kidnaping was tantamount to encouraging, directing, aiding, or attempting to aid in the offense, and therefore, it authorized a conviction under the law of parties." *Otto*, 95 S.W.3d at 285. Because the Court of Criminal Appeals thus held that the law of parties applies to this case, we cannot say that it was improper for the prosecutors to refer to the law of parties in their closing arguments.

### Jury Charge

■ McLaren asserts that the trial court erred by instructing the jury that certain facts do not constitute a defense to organized criminal activity.

Section 71.03 of the Texas Penal Code prohibits a defendant from asserting the following facts as a defense:

(1) one or more members of the combination are not criminally responsible for the object offense;

(2) one or more members of the combination have been acquitted, have not been prosecuted or convicted, have been

convicted of a different offense, or are immune from prosecution;

(3) a person has been charged with, acquitted, or convicted of any [of the object] offense[s] . . .; or

(4) once the initial combination of three or more persons is formed there is a change in the number or identity of persons in the combination as long as two or more persons remain in the combination and are involved in a continuing course of conduct constituting an offense under this chapter.

TEX. PEN.CODE ANN. § 71.03 (Vernon 2003). Attempting to track this statutory language, the court instructed the jury:

It is no defense to prosecution for the offense of Engaging in Organized Criminal Activity that one or more members of a combination are not criminally responsible for the offense as charged in a particular case; that one or more members of a combination have been acquitted, have not been prosecuted or convicted, have been convicted of a different offense, or are immune from prosecution; or that there is a change in the number or identity of persons to a combination, as long as the initial combination of three or more persons is formed and two or more persons remain in a combination and are involved in a continuing course of conduct constituting the offense charged in the indictment.

McLaren argues that it was improper to include this instruction in the jury charge because there was no evidence regarding any of the defenses excluded by section 71.03. *See* TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003) (requiring court to give jury a written charge "setting forth the law applicable to the case"); *Tro v. State,* 101 Tex.Crim. 185, 188, 274 S.W. 634, 635 (1925) ("[A] charge should not be given which is inapplicable to the evidence, or which presents a defense or an issue not made by the evidence."); *cf. Dowden v. State,* 537 S.W.2d 5, 7 (Tex.Crim.App.1976) (stating that it is useless and confusing to include in the charge statutory provisions that cannot be relied upon for a conviction). *But see Martinez v. State,* 157 Tex. Crim. 603, 606, 252 S.W.2d 186, 187–88 (1952) (holding that it was permissible to include statutory elements that did not apply to the case in the abstract portion of the charge).

■ Assuming that the court erred by instructing the jury regarding the excluded defenses, we must determine whether McLaren was harmed by the error. Because McLaren objected to the instruction, the question is whether he suffered "some harm." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). McLaren has the burden to suggest how prejudice may have occurred. *Ovalle v. State,* 13 S.W.3d 774, 787 & n. 38 (Tex.Crim.App.2000).

McLaren argues that prejudice occurred because the instruction confused the jury. In particular, he complains of this language: "It is no defense to prosecution for the offense of Engaging in Organized Criminal Activity that one or more members of a combination are not criminally responsible for the offense as charged in a particular case." McLaren asserts that this instruction allowed the jury to find him guilty even if it believed he was not criminally responsible. He argues that the jurors must have considered this instruction important because they underlined the words "criminally responsible for the offense."

■ We must consider McLaren's argument in light of the entire jury charge, the arguments of counsel, the state of the evidence, and any other relevant information revealed by the record. *Ovalle,* 13 S.W.3d at 786; *Almanza,* 686 S.W.2d at 171.

The complained-of instruction was included in the abstract portion of the charge. The application paragraphs of the charge accurately set forth the elements of the offense and authorized a conviction only if the jury found those elements beyond a reasonable doubt. Thus, the application paragraphs authorized a conviction only if the jury found McLaren to be criminally responsible.

The prosecutors did not refer to the complained-of instruction during their closing arguments. And although defense counsel's closing argument focused on the issue of criminal responsibility, the argument was based on an incorrect understanding of the law. Counsel argued that McLaren could not be held responsible for the kidnaping because he did not personally perform the abduction. Under the Court of Criminal Appeals' decision, it is irrelevant whether McLaren personally performed the abduction. *See Otto*, 95 S.W.3d at 284.

Finally, the State presented overwhelming evidence that McLaren was involved in the planning and execution of the Rowes' kidnaping and was therefore criminally responsible for their abduction. Before the kidnaping, McLaren circulated fliers designating the Rowes' home as a "miliary target." One of the kidnappers told a witness that McLaren was involved in the kidnaping. While they were held hostage, the Rowes overheard one of the kidnappers talking via radio to McLaren. They also heard McLaren being interviewed on television regarding their kidnaping. In the interviews, McLaren discussed how the Rowes were being treated and described their physical condition. He also talked about "his boys" being at the Rowes' house and explained why the Rowes were being held hostage. While the Texas Rangers were negotiating the Rowes' release, one of the Rangers heard McLaren's voice over a scanner. He heard McLaren say "full authority to shoot," "neutralize second miliary target," and "missile crew one, be prepared." As soon as the Rangers and the kidnappers made an agreement for the Rowes' release, the Ranger monitoring the scanner heard McLaren say, "Base one, stand down[,] we have a negotiated release." After they released the Rowes, the kidnappers and McLaren retreated to McLaren's house, which they referred to as their "embassy." Considering all this evidence, it is unlikely that the jury found McLaren guilty even though it did not believe he was criminally responsible.

## Sufficiency of Evidence at Punishment Phase

■ McLaren argues that the trial court erred by not finding that the Rowes were voluntarily released in a safe place.

A person who engages in organized criminal activity by conspiring to commit an offense is guilty of the same level of offense as the offense that he conspired to commit. TEX. PEN.CODE ANN. § 71.02(c) (Vernon 2003). McLaren conspired to commit aggravated kidnaping. Aggravated kidnaping is generally a first-degree felony. *Id.* § 20.04(c) (Vernon 2003). However, at the punishment phase of a prosecution for aggravated kidnaping, the defendant may raise the issue as to whether he "voluntarily released the victim in a safe place." *Id.* § 20.04(d). If the defendant proves this issue by a preponderance of the evidence, the offense is punishable as a second-degree felony. *Id.* McLaren raised this issue during the punishment phase, but the court found that the Rowes were not voluntarily released in a safe place.

■ Because McLaren had the burden of proving by a preponderance of the evidence that the Rowes were voluntarily re-

leased in a safe place, we must consider all the evidence relevant to this issue to determine whether the trial court's failure to find in McLaren's favor is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Crim. App.1990); *Harrell v. State*, 65 S.W.3d 768, 772 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd).

To determine whether a kidnaping victim was released in a safe place, courts have considered the following factors: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of day; (4) climatic conditions; (5) the condition of the victims; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *See, e.g., Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.-Dallas 1996, pet. dism'd). These factors are only aids to be used in deciding whether the court's finding was manifestly unjust, after considering all the surrounding circumstances of the case. *Harrell*, 65 S.W.3d at 773. The court may also consider the victims' subjective feeling of safety, but these feelings should not be the overriding factor. *Lavarry*, 936 S.W.2d at 697.

The kidnappers abandoned the Rowe residence sometime near midnight. They went with McLaren and others to McLaren's house. A stand-off between the Republic of Texas and law enforcement authorities followed. Since the Rowes were left in their own home, they obviously were familiar with the area. Law enforcement officials and an ambulance were in close proximity and arrived at the residence within five minutes after the kidnappers left. Although Joe Rowe had been injured by the kidnappers, he was able to walk out of the house. The Rowes were taken to a hospital shortly after the kidnappers left.

They did not return to their house until after the stand-off between the authorities and the Republic of Texas had ended.

When the kidnappers left the Rowe residence, the authorities were located south of the residence. There were no authorities north of the residence. The kidnappers were at large in the area, and the authorities did not know how many Republic of Texas members were in the area. A Texas Ranger testified that he wanted the Rowes to be taken away from their house "as soon as possible ... to get them out of harm's way." He did not believe the Rowes' house was safe because the Ranger had information that "someone" might be watching the area. The Rowes testified that they did not feel safe in their house when the kidnappers left because they had overheard the kidnappers' conversations indicating that another member of the Republic of Texas was near their house.

Shortly after the kidnappers agreed to release the Rowes, a Texas Ranger heard a radio communication in which McLaren said, "There will be an ambush. Go to code black and do not hesitate to unleash firepower." Approximately one hour after the kidnappers left the Rowe residence, the Ranger heard McLaren say, "Be prepared for an assault at dawn." When the Republic of Texas surrendered, explosive devices and numerous rifles and semi-automatic guns, along with ammunition, were recovered at McLaren's residence. Two Texas Rangers testified that the Rowe residence did not come under attack after the kidnappers left and that it was a safe place assuming no members of the Republic of Texas were near the house.

■ McLaren suggests that the trial court should have found that the Rowes were released in a safe place because nothing dangerous did, in fact, occur at the Rowe residence after the kidnappers left. We conclude, however that this fact is not

dispositive. *Cf. Harrell*, 65 S.W.3d at 773 (upholding jury finding that victim was not released in a safe place, even though victim managed to free herself and run for assistance). There was ample evidence from which the trial court could have concluded that one or more members of the Republic of Texas were staked out near the Rowe residence. The court also could have found that after the kidnaping, a volatile situation existed in the area, particularly considering that the Republic of Texas was heavily armed. *Cf. Oestrick v. State*, 939 S.W.2d 232, 239 (Tex.App.-Austin 1997, pet. ref'd) (holding that victim was not released in a safe place when she was left unarmed and alone in a truck with armed defendant on one side and police on the other).

## Conclusion

For the reasons stated herein, the judgment of the trial court is affirmed.