NO. 07-03-0023-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 25, 2005

_____

LARRY POSEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 100TH DISTRICT COURT OF CARSON COUNTY;

NO. 2991; HONORABLE DAVID M. MCCOY, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Appellant Larry Posey brings this appeal challenging the sufficiency of the evidence supporting his conviction for the felony offense of engaging in organized criminal activity. Finding the evidence legally sufficient, we affirm.

Appellant was charged in an indictment alleging that from July 12, 1999 through December 31, 2001, he committed the felony offense of theft of property with an aggregate

value over $100,000 but less than $200,000 with the intent to "establish, maintain, or participate in a combination" consisting of appellant and six other named individuals. The indictment alleged appellant performed at least one of thirty-three listed acts of theft.[1] Appellant plead not guilty and the case was tried to a jury over three days in December 2002. The jury found appellant guilty and assessed punishment at ninety-nine years confinement and a ten thousand dollar fine. The trial court assessed punishment in conformity with the jury's verdict. Appellant timely perfected appeal from that judgment and presents a single point assigning error to the trial court's denial of his motion for an instructed verdict.

A motion for instructed verdict is a challenge to the legal sufficiency of the evidence. *Coggin v. State*, 123 S.W.3d 82, 89 (Tex.App.–Austin 2003, pet. ref'd). In reviewing the legal sufficiency of the evidence, we recognize that the jury is the sole judge of the weight and credibility of the evidence, and look at all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560, 573 (1979); *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995); *Griffin v. State*, 614 S.W.2d 155, 159 (Tex.Crim.App. 1981). We measure the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily

---

[1]In the charge submitted to the jury, the number of theft offenses alleged was reduced to thirteen.

increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The standard is the same in both direct and circumstantial evidence cases. *Burden v. State*, 55 S.W.3d 608, 612-13 (Tex.Crim.App. 2001). The standard for legal sufficiency review "gives full play" to the jury's responsibility "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Sanders v. State*, 119 S.W.3d 818, 820 (Tex.Crim.App. 2003).

Where, as here, the State's case is based in part on the testimony of an accomplice, a sufficiency review must incorporate the accomplice-witness rule stated in article 38.14 of the Code of Criminal Procedure. It provides "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). Application of that rule requires us initially to eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001). The corroborating evidence need not be sufficient by itself to establish guilt. The accomplice-witness rule is not based on federal or state constitutional notions of sufficiency, it simply requires "other" evidence tending to connect the defendant to the offense. *Id.*

The offense of engaging in organized criminal activity is defined by section 71.02(a) of the Penal Code. (Vernon supp. 2004). It provides, in relevant part, that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit theft. *Id.* Section 71.01 defines "combination" as "three or more persons who collaborate in carrying on criminal activities[.]" Tex. Penal Code Ann. § 71.01(a) (Vernon 2003).

Viewing the allegations in the indictment against the statutory language, the elements the State was required to prove were (1) the existence of a combination and (2) that appellant committed theft, (3) with intent to participate in the combination or profits of the combination.[2] *See Hart v. State*, 89 S.W.3d 61, 63-64 (Tex.Crim.App. 2002); *Munoz v. State*, 29 S.W.3d 205, 208 (Tex.App.–Amarillo 2000, no pet.). To establish a combination the State must show the members of the combination mutually agreed or intended to work together. *Munoz*, 29 S.W.3d at 208. The agreement must be to the commission of more than one offense or criminal episode. *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App. 1999); *Ross v. State*, 9 S.W.3d 878, 882 (Tex.App.–Austin 2000, pet. ref'd). Such agreements may, and almost necessarily must, be established by circumstantial evidence. *Munoz*, 29 S.W.3d at 209.

---

[2]The State's brief mistakenly asserts appellant was charged with "conspiring with several others to commit aggregated theft." Although Section 71.02(a) authorizes a charge based on conspiracy to commit a listed offense, the indictment against appellant alleged he committed theft, not that he conspired to commit theft. One of the aspects of the hypothetically correct charge under which we must measure the sufficiency of the evidence is that it be "authorized by the indictment." *Malik*, 953 S.W.2d at 240.

The State sought to show appellant was a member of a combination engaged in a course of theft of vehicles and industrial equipment, the primary members of which were Delbert Morris, Mark Byers, Vicki Hardy, Paula Cardosi, and appellant. Cardosi, whose testimony is subject to the accomplice-witness rule, testified that in the summer of 2001 she, Morris and appellant would drive around Amarillo "almost everyday" looking for things to steal. She recounted an instance when she was driving and appellant stole a Harley Davidson motorcycle from a dealership and subsequently sold it to Morris. In a separate incident when she was driving with appellant, he stole a motorcycle from a motel parking lot. Cardosi testified she was with appellant when he stole two U-haul vehicles and sold the contents to Morris. Cardosi said she made several trips with Morris and others to a property in rural Carson County. The trips were made in the early morning hours for the purpose of Morris's delivery of stolen vehicles for hiding and subsequent disassembly. Appellant did not participate in those trips.

Nathan Moore, also identified as an accomplice witness, testified he overheard a conversation between appellant and Morris concerning appellant's sale of a silver Corvette to Morris for "something like" $2,000. Moore agreed he heard appellant "say something about" the car being stolen. Moore also said appellant sold to Morris a second silver Corvette that appellant owned.

The State called Ellen Montieth concerning a brown Chevrolet truck purchased for her by her parents. She testified a person named Randy Hutchinson took the truck keys from her purse and left with her truck. Three days later she asked appellant to help recover her truck and he agreed. Riding together they located the truck, broke into it, and

-5-

drove it to the home of a friend of appellant. Montieth testified appellant wanted the pickup and told her to report the truck as stolen. She testified, "I told him not to, because it was my parents . . . ." She believed he wanted the truck for parts to fix a truck he owned. Montieth did not agree to report the truck as stolen at that time, and when she returned for the truck the next day it was gone. She later confronted appellant and asked him "why'd you take my pickup?" He replied "I told you to report it stolen."

In November 2001, law enforcement officers executed a search warrant on the rural Carson County property occupied by Byers and Hardy. At trial officers identified six vehicles, or parts of vehicles, found on the property, each of which had been reported stolen in Amarillo. Four of the vehicles were trucks, the others were a 1999 Pontiac Firebird and parts of a 1984 Corvette. Ellen Montieth identified the truck shown in state's exhibit six as the remains of her truck. Officers also identified a trailer, ditch digging equipment, and skid steer loader found on the property as having been stolen in Amarillo.

The State presented the testimony of Abel Siller, Jr., a "security threat group officer" with the Texas Department of Criminal Justice, Institutional Division. Siller interviewed appellant in connection with an investigation of threats made against appellant by other prison inmates. During that interview appellant admitted to being part of a group that stole vehicles from dealerships, particularly new pickup trucks and Harley Davidson motorcycles. He indicated to Siller he had stolen between forty and fifty vehicles. Siller further said appellant told him that he had "current charges out of Carson County," that police had found vehicles in Carson County but "law enforcement didn't have s--t on him because he – the ranch didn't belong to him." On cross-examination, Siller acknowledged that

-6-

appellant did not tell him he had stolen any of the vehicles that were located in Carson County.

The evidence of the existence of a combination begins with Cardosi's testimony relating collaboration in the theft of vehicles and other items, and in the transfer of stolen vehicles from Amarillo to the Carson County property. Her testimony identified the members of the combination and explicated their roles, providing evidence of a combination by which appellant would steal vehicles and sell them, or the property they contained, to Morris who would deliver the vehicles to Byers and Hardy for disassembly.[3] Cardosi's testimony concerning the roles of appellant and Morris in the combination was supported by Moore's testimony that appellant agreed to sell a Corvette to Morris amid discussion that it was stolen. The nature of the relationship between those two parties was shown regardless whether the Corvette appellant sold to Morris was shown to be the same one from which parts were found at the Carson County property.

The parties do not address application of the accomplice-witness rule to the evidence establishing a combination. Because the State is not required to show the defendant was a member of the combination to support a conviction for engaging in organized criminal activity, *Hart v. State*, 89 S.W.3d 61, 63 (Tex.Crim.App. 2002), the evaluation of whether non-accomplice witness evidence "tends to connect the accused with the commission of the crime," *Solomon*, 49 S.W.3d at 361, may not be applicable to that

---

[3]In that respect, we cannot agree with appellant's contention that none of the accomplice witnesses admitted to involvement in the combination. Cardosi's testimony she assisted Morris with delivery of stolen vehicles to Carson County admits her involvement.

element. In any event, the testimony of accomplices Cardosi and Moore concerning the existence of the combination is corroborated by that of Siller, which includes appellant's statement to Siller he was part of a group that stole forty to fifty vehicles. The number of vehicles stolen supports an inference that the group's collaboration extended beyond a single offense or criminal episode. *See Nguyen*, 1 S.W.3d at 697.

The second and third elements required that the State prove appellant committed at least one of the thirteen thefts included in the court's charge, with the intent to participate in the combination or the profits of the combination. Appellant contends there is no evidence he committed any of those thirteen thefts.[4] We disagree. No specific vehicle Cardosi testified she witnessed appellant steal was discovered at the Carson County property. But Montieth's testimony told of appellant's demonstrated ability to break into her truck, his knowledge of its location shortly before it was taken, his instruction to her to report the truck stolen and his desire to have the truck for parts. As noted, Montieth also testified that, in response to her later accusation, "Why'd you take my pickup?" appellant

---

[4]Appellant cites *McLaren v. State*, 2 S.W.3d 595 (Tex.App.–El Paso 1999), *rev'd sub nom. Otto v. State*, 95 S.W.3d 282 (Tex.Crim.App. 2003), in which the court of appeals found there was no evidence McLaren performed the overt act alleged in an indictment charging him with organized criminal activity through a conspiracy to commit aggravated kidnaping. Prosecution for organized criminal activity based on conspiracy to commit one of the underlying offenses listed in Penal Code Section 71.02 requires proof of the defendant's performance of an overt act. Tex. Penal Code Ann. § 71.01(b) (Vernon Supp. 2004). As previously noted, appellant clearly was indicted and tried on the theory he committed theft, not that he conspired to commit theft. The use of the phrase "overt act" in the indictment and charge, though not complained of, was thus inappropriate. *See State v. Duke*, 865 S.W.2d 466, 467-68 (Tex.Crim.App. 1993).

replied, "I told you to report it stolen."[5] Appellant's reply was an adoptive admission, *see Flores v. State*, 84 S.W.3d 675, 685 (Tex.App.–Houston [1st Dist.] 2002, pet. ref'd) (defendant's failure, during taped conversation with another, to deny previous extraneous theft mentioned by the other or to deny in that conversation he knew to what other referred, was evidence of guilt of extraneous theft), and, taken together with Montieth's other testimony, provided evidence from which the jury rationally could conclude appellant was responsible for theft of her truck. Given the evidence of the relationships among appellant, Morris and Byers, the jury also could infer from the discovery of that truck, disassembled, at the Carson County property that appellant's theft of the truck was with the intent to participate in the combination.

We find the evidence, viewed in the light most favorable to the verdict, as it must be, sufficient to permit a rational jury to find each of the essential elements beyond a reasonable doubt. We overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice

Johnson, C.J., not participating.

Do not publish.

---

[5]A pretrial statement Montieth gave to investigators indicates she later told her mother to report the truck stolen and to name appellant as "the suspect."