William JOHNSON a/k/a William Coleman, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–98–00379–CR, 14–98–00597–CR to 14–98–00601–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 26, 2000.

Buddy Stevens, Angleton, for appellants.

David Bosserman, Angleton, for appellees.

Panel consists of Justices CANNON, DRAUGHN, and LEE.*

## OPINION

BILL CANNON, Justice (Assigned).

William Johnson a/k/a William Coleman appeals his six consolidated jury convictions for engaging in organized criminal activity to commit aggravated robbery of six different people. TEX. PEN.CODE ANN. § 71.02(a)(1) (Vernon 1994 & Supp.2000).

* Senior Justices Bill Cannon, Joe L. Draughn,

The jury assessed his punishment at life imprisonment on each offense, enhanced by five prior felony convictions. In four points of error, appellant contends the trial court erred: (1) in charging the jury on the law of parties; (2) & (3) by failing to grant a directed verdict because the evidence was legally and factually insufficient; (4) in allowing a gruesome photograph of the complainant into evidence. We affirm.

## BACKGROUND

On December 19, 1993, at about 10:00 p.m., David and Stephanie Palmer, their three children, Adam, Candice, and Shawn, and Shawn's friend, Joe Smith, were visiting in parts of the Palmers' home when Stephanie observed a black man with a shotgun in her kitchen. The man was later identified as Charles Harold Hughes, and he was not wearing a mask. Hughes told everyone that this was a robbery and to get down on the floor. A second man with a handgun came in and pointed the gun at the people in the living room. Mr. Palmer stated the second man was black, wearing a black ski mask, a pullover sweater and baggy blue jeans. Both Hughes and the other man were wearing gloves. The second man said, "[T]his is a robbery! Get up against the wall and lay down flat on your face." Mr. Palmer heard "ransacking" noise coming from the master bedroom and the kids' bedroom. Hearing noise in two parts of his house, he felt there were a total of four men in his house. Mr. Palmer heard a shotgun blast, and one of the gunmen said, "[D]on't mess with us." He heard the voices of the other two men who were ransacking the bedrooms, and they said, "[K]ill them, kill them all." The men then left taking rifles, cash, a wallet, credit cards, a computer, a monitor, a TV, a VCR, a camcorder, and other items of personal property with them. Mr. Palmer went to his wife's side and found that the right side of her face was gone, and she was bleeding profusely. Mr. Palmer stated that the men took 25

and Norman Lee sitting by assignment.

minutes to carry all of their property out of their house and load it into their vehicle. An ambulance took Mrs. Palmer to the hospital where she stayed for six or seven weeks. She had 28 surgeries performed by the time of the trial. The police investigated but found no fingerprints.

Marva Sears, known as "Ni'se" to her friends, testified that Hughes, Shawn Adams, James Barrett, and appellant were living with her at her house right before Christmas in 1993. Although she could not remember the date, she stated it was "around" Christmas when she heard Shawn Adams rapping about a lady getting shot in Pearland. She stated that appellant appeared afraid. She observed a TV, a computer, and a VCR that was carried into her house and did not belong there. She did not know who brought this property into her house, and she told Shawn to remove the property.

Tara Johnson had been dating appellant during this time, and she said she knew Hughes and Shawn Adams. She stated that Hughes, Shawn Adams, and appellant met regularly at Ni'se's house. She heard an unusual conversation between the trio in front of Ni'se's house around 10:00 to 10:30 p.m., the night of the robbery. She remembered December 19, 1993, as the date because it was her brother's birthday. She testified that the trio appeared nervous, and Shawn Adams said, "We went all the way to Brazoria and it wasn't there." Hughes said, "F—k that bitch." Appellant said, "It wasn't suppose to go like that."

Randolph Scott knew the trio, and stated he bought a TV from Shawn Adams at Ni'se's house in December 1993. He stated that a TV, a VCR, and a camcorder came into the house in December 1993.

Jimmy Lackey was an inmate in the same cell with appellant and Shawn Adams. He testified that appellant told him that he saw Hughes shoot Mrs. Palmer. Appellant told Lackey that Mrs. Palmer attempted to settle a child and Hughes spun around and shot her in the head with a shotgun. Appellant further

indicated to Lackey that the shooting did not bother him, and told Lackey, "F—k that bitch, I saw her get shot and it didn't even bother me."

Gregory Felder was also in the same cell with appellant and Shawn Adams for about five and one-half months. Appellant told Felder that he saw Mrs. Palmer get shot in the face in her home. Appellant told Felder that the "guys" that entered the Palmers' home wore ski masks and went "rambling" through the house. Appellant referred to Mrs. Palmer as "that white bitch" and also told Felder that it was "good for her because she got shot in the face."

After the trial court overruled appellant's motion for a directed verdict, appellant presented two cell mates as defensive witnesses, Donald Johnson and Timothy Work. Johnson and Work were also in the same cell with appellant when he told Lackey and Felder that he saw Hughes shoot Mrs. Palmer. Johnson and Work testified that they never heard anyone in the cell talk about their cases.

## THE JURY CHARGE ON LAW OF THE PARTIES

█ In point one, appellant contends the trial court erred in charging the jury on the law of parties in addition to charging him as a principal acting with Shawn Adams and Charles Hughes in a combination to commit aggravated robbery. Appellant objected to the charge on these grounds arguing that the charge allowed the State to convict on two separate theories. Appellant argues that the court's charge allows the State to "prosecute for engaging in organized criminal activity as a party."

The application paragraph of the trial court's jury charge in each case allowed the jury to convict if it found appellant "did . . . with intent to establish, maintain, and participate in a combination . . . with . . . Charles Harold Hughes and Shawn Adams . . . knowingly threaten and place

[the victim] in fear of imminent bodily injury and death...." The trial court also instructed the jury separately on the requirements of a combination and on the law of parties. After the instruction on a combination, the court's charge authorized the jury to convict appellant if they found he aided or encouraged Hughes and Adams in the commission of aggravated robbery on the Palmers. The jury found appellant guilty of engaging in organized criminal activity "as charged in the indictment" in each of the six cases.

The parties charge in this case applied to appellant's acts in committing aggravated robbery of the Palmers, not to the intent to participate in a combination to commit the robbery. The charge did not authorize appellant's conviction by engaging in organized criminal activity as a party with Hughes and Adams. The jury was authorized to convict appellant only if it found that appellant intended to participate in a combination with Hughes and Adams to commit aggravated robbery; the *aggravating circumstance of* aggravated robbery could have been committed while appellant was acting alone or as a party with Hughes and Adams. A similar complaint about erroneously charging the jury with the law of parties in a combination offense in each of three companion cases was overruled recently by the Beaumont Court of Appeals. The Court found in these cases that the parties charge applied to the appellant's acts causing the death of a victim, and not to his intent to participate in a combination. *See Campbell v. State*, 18 S.W.3d 914, 920(Tex.App.—Beaumont 2000, no pet.h.); *Brumfield v. State*, 18 S.W.3d 921, 927–928 (Tex.App.—Beaumont 2000, no pet.h.); *Armstrong v. State*, 18 S.W.3d 928, 932–933 (Tex.App.—Beaumont 2000, no pet.h.). In each of those cases, a similar charge was found to authorize the jury to convict each of the three appellants only if it found that he murdered the victim while either acting alone or as a party, and that each of the three appellants was then incarcerated in the Terrell Unit and intended to participate in

a combination. *Id.* We hold the trial court did not err in submitting to the jury an instruction on the law of parties. Appellant's point of error one is overruled.

## THE LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In point two, appellant contends the trial court erred by failing to grant a directed verdict because the evidence was legally insufficient to support the verdict. In point three, he contends the trial court erred by failing to grant a directed verdict because the evidence was factually insufficient to support the conviction.

### Standard of Review

■ A challenge to the denial of a motion for an instructed verdict is actually a challenge to the legal sufficiency of the evidence. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Thornton v. State*, 994 S.W.2d 845, 849 (Tex.App.—Fort Worth 1999, pet. ref'd).

■ In reviewing the legal sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict. *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993). In reviewing the sufficiency of the evidence in the light most favorable to the verdict or judgment, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ransom v. State*, 789 S.W.2d 572, 577 (Tex.Crim.App. 1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986). The jury is the exclusive judge of the facts,

credibility of the witnesses, and the weight to be given to the evidence. *Chambers v. State,* 805 S.W.2d 459, 462 (Tex.Crim.App. 1991). In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). In making this determination, the jury can infer knowledge and intent from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982).

■ The sufficiency of the evidence to support a conviction should no longer be measured by the jury charge actually given but rather measured by the elements of the offense as defined by a hypothetically correct charge. *See Curry v. State,* 975 S.W.2d 629, 630 (Tex.Crim.App.1998). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability and adequately describes the particular offense for which the defendant was tried." *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1992).

■ Under *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996), a court of appeals reviews the factual sufficiency of the evidence when properly raised after a determination that the evidence is legally sufficient. *Id.* In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* In conducting a factual sufficiency review, the court of appeals reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that

of the jury. If the court of appeals reverses on factual sufficiency grounds, it must detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. The appropriate remedy on reversal is a remand for a new trial. *Id.*

■ A factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex. Crim.App.1997). This court's evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Id.* The appellate court maintains this deference to the fact findings, by finding fault only when "the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." *Id.*

The court of criminal appeals has recently clarified *Clewis* addressing the factual sufficiency standard of review. *See Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App.2000). The court of criminal appeals held, in pertinent part:

> We hold, therefore, that our opinion in *Clewis* is to be read as adopting the complete civil factual sufficiency formulation. Borrowing in part from Justice Vance's concurring opinion in *Mata v. State,* 939 S.W.2d 719, 729 (Tex.App.— Waco 1997, no pet.), the complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.

*Johnson,* 23 S.W.3d at 11.

### Discussion

■ Under point two, appellant argues there is no evidence of his participation in

a combination, or that he used a firearm at the Palmers' house, or that he committed theft. We disagree.

Under the facts as set out above, in this opinion, all the participants in the robbery wore masks except Hughes. The second male was in the room with the Palmers and Smith, and yelled: "[T]his is a robbery! Get up against the wall and lay down flat on your face." Mr. Palmer stated he heard two other men in two separate bedrooms "ransacking." Appellant's cell mate, Jimmy Lackey, stated appellant told him that he was at the Palmers' house on the night of the robbery and he saw Hughes shoot Mrs. Palmer in the head. Ni'se said a TV, VCR, and a camcorder were carried into her house, but she did not know which of the participants brought the equipment in. Tara Johnson stated the trio were acting nervous, and were standing in the front yard of Ni'se's house when she overheard an unusual conversation. Adams said, "We went all the way to Brazoria and it wasn't there." Hughes said, "F—k that bitch." Appellant said, "It wasn't suppose to go like that." Mr. Palmer stated all the men left the house carrying out many items of personal property, including a TV, VCR, and a camcorder.

Appellant was charged with Engaging in Organized Criminal Activity under Penal Code section 71.02, which provides in relevant part:

A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more [enumerated offenses, including aggravated robbery].

TEX. PEN.CODE ANN. § 71.02(a)(1) (Vernon 1994 & Supp.2000).

"Combination" is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PEN.CODE ANN. § 71.01(a) (Vernon 1994 & Supp.2000). To establish participation in a combination, the State must prove "that the appellant intended to 'establish, maintain, or partici-pate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Dowdle v. State*, 11 S.W.3d 233, 235–236 (Tex.Crim.App.2000); *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App.1999). These activities need not, individually, be criminal offenses. *Id.* "An agreement constituting conspiring to commit may be inferred from the acts of the parties." TEX. PEN.CODE ANN. § 71.01(b) (Vernon 1994 & Supp.2000)

The jury could infer that appellant had an agreement conspiring to commit the robbery by his actions at the Palmers' residence. Appellant was one of the three men wearing a mask at the Palmers' home, and the man in the living room with Hughes held a gun on the victims telling them all to lie down. The other two were "ransacking" the two bedrooms and shouted, "Kill them all." Accordingly, a jury could infer that the other three men in the house, one of which was appellant, conspired to commit the robbery with Hughes. The use of firearms by the two men in the living room was obviously known to the other two, because they were shouting encouragement to the two in the living room to kill the victims. Appellant admitted to Lackey that he saw Hughes shoot Mrs. Palmer, and that he did not care. All four of the men committed "overt acts" in furtherance of the conspiracy: (1) the other man with Hughes in the living room held a gun on all of the victims and ordered them to get on the floor; (2) Hughes held the shotgun, ordered all the victims to lie on the floor, and shot Mrs. Palmer during the robbery; (3) the other two men "ransacked" the house and shouted "Kill them all" after Hughes shot Mrs. Palmer; and (3) all four participated in taking the property out of the house. Therefore, a rational jury could conclude appellant was one of the three other men in the house, knew of Hughes intention to "use" the shotgun during the continuing course of criminal activity, and he would be jointly responsible with Hughes for the

use of a deadly weapon. *See Dowdle,* 11 S.W.3d at 236–238. After the robbery, appellant, Hughes, and Adams, met at Ni'se's house and talked "nervously" about events that occurred earlier. A TV set, a VCR, and a camcorder were carried into Ni'se's house, and she told Adams she wanted the property taken out. This would be evidence of a "continuing course of criminal activities" following the robbery demonstrating appellant, Hughes, and Adams were collaborating as a "combination". *Id.* The State has proved: (1) a combination of "three or more persons who collaborate in carrying on criminal activities," under section 71.01(a), Texas Penal Code; (2) appellant intended to "establish, maintain, or participate in" the combination; (3) appellant agreed with Hughes and Adams to commit aggravated robbery of the Palmers' residence; (4) appellant performed overt acts in furtherance of the conspiracy, including transportation of the stolen property from the Palmers' residence. *See Dowdle,* 11 S.W.3d at 236–237 & n. 2. We find that rational jurors could have found the essential elements of the offense beyond a reasonable doubt. We overrule appellant's point of error two.

In point three, appellant contends the same evidence is factually insufficient to sustain his conviction, and the trial court erred in failing to grant a directed verdict. Appellant relies on the same alleged deficiencies in the State's proof that he used to argue the evidence was legally insufficient. His argument is essentially that the quantum of the evidence is "so against the great weight of the evidence as to be clearly wrong and unjust." Neither appellant, Hughes, nor Adams testified, and the only defensive evidence offered was in the form of rebuttal testimony by two other cell mates to the effect that they never heard appellant talk about the crime. Appellant further argues that the testimony of Lackey and Felder "is so tainted as to be beyond belief." He further contends that: (1) the property was never recovered; (2) there were no fingerprints recovered at the Palmers' house; (3) none of the victims identified appellant as one of the robbers; (4) there were discrepancies in the actual time appellant, Shawn, and Hughes, had their "unusual" conversation at Ni'se's house after the robbery; (5) there is no evidence connecting the TV, VCR, and camcorder observed in Ni'se's house to the robbery; (6) Lackey never gave any details about the robbery at the Palmers' home; and (7) the trio talked about an incident in "Brazoria" but the robbery took place in Pearland, Brazoria County. Thus, appellant asserts the evidence is factually insufficient to sustain the conviction.

Appellant's argument goes to the weight and credibility of the evidence. What weight to give contradictory testimonial evidence is within the sole province of the trier of the fact, because it turns on an evaluation of credibility and demeanor. *Cain v. State,* 958 S.W.2d 404, 408–09 (Tex. Crim.App.1997). Accordingly, we must show deference to the jury's findings. *Id.* at 409. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410. In performing a factual sufficiency review, the courts of appeals are required to give deference to the jury verdict, examine *all* of the evidence impartially, and set aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 958 S.W.2d at 410; *Clewis,* 922 S.W.2d at 129. We have examined all of the evidence impartially, a neutral review, and do not find that proof of engaging in organized criminal activity is so "obviously weak as to undermine confidence in the jury's determination." *Johnson,* 23 S.W.3d at 11. Under the new *Clewis–Johnson* test, we further find that the proof of guilt is not greatly outweighed by appellant's contrary proof. *Id.* Considering all of the evidence, measuring it against the charge, and giving due deference to the role of the jury as fact finder, we cannot say that the finding of guilt, beyond a reasonable doubt, and the im-

plied finding against the defensive issues, beyond a reasonable doubt, are so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Reaves v. State*, 970 S.W.2d 111, 118 (Tex.App.—Dallas 1998, no pet.). We overrule appellant's point of error three.

## THE GRUESOME PHOTOGRAPH

 In point four, appellant contends the trial court erred in allowing the photograph of Mrs. Palmer's injuries to be introduced into evidence before the jury. The photograph depicted damage to Mrs. Palmer's head after she had been shot by Hughes. Appellant objected that the photograph "may be relevant," but further made a rule 403 objection that the "prejudicial value far outweighs is probative value" because there was no issue concerning the extent and nature of Mrs. Palmer's injuries. The State argued that the nature of the injury made the photo more probative than prejudicial, and just because it was gruesome did not mean it was prejudicial. The trial court overruled appellant's relevancy objection and found the probative value of the photograph outweighed the prejudicial value.

Once a defendant objects to photographic evidence on the basis of rule 403, Texas Rules of Evidence, the trial court must weigh its probative value against its potential for *unfair* prejudice. *Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim.App.1998). An appellate court reviewing the trial court's decision may reverse it only for an abuse of discretion, *i.e.,* only when the trial court's decision was outside the zone of reasonable disagreement. *Id.*

On the record before us, we can discern no abuse of discretion on the part of the trial court in admitting the photograph. The photograph in question apparently depicted no more than the gruesome nature of the injuries inflicted by Hughes. Although a crime scene photograph may be gruesome, that fact alone will rarely

render the photograph necessarily inadmissible under rule 403. *Id.* Appellant has demonstrated no abuse of discretion in the admission of the photograph into evidence. We overrule appellant's point of error four.

We affirm the judgment of the trial court.