Affirmed and Memorandum Opinion filed July 31, 2003









Affirmed
and Memorandum Opinion filed July 31, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00717-CR

____________

 

MARCUS HAWKINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On
Appeal from the 262nd District Court

Harris County, Texas

Trial
Court Cause No. 898,607

 



 

M
E M O R A N D U M   O P I N I O N

A
jury convicted appellant Marcus Hawkins of murder and assessed punishment at  eighty years=
confinement.  In four points of error,
appellant challenges the legal and factual sufficiency of the evidence.  We affirm.

Background
and Procedural History

On
January 23, 2001, at approximately 8:15 a.m. Houston police officer A.W. Duncan
responded to a suspicious activity call from the Crescent City Apartments in
Harris County. 








When
Officer Duncan arrived, he found the complainant, Jonus
Onwuchuruba, dead in a bathroom in his
apartment.  The complainant had bled to
death after suffering approximately eighty lacerations, abrasions, and
contusions caused by blunt and sharp force trauma.  Officer Duncan also discovered large amounts
of blood throughout the apartment, broken glass from a coffee table, and a
trail of bloody shoe prints leaving the apartment.

Two
witnesses, residents of the Crescent City Apartments at the time of the murder,
testified at trial regarding incidents they witnessed between 7:00 and 7:30 the
morning of January 23, 2001.  Dejuana Thompson lived in an apartment adjacent to the
complainant=s apartment.  Thompson
heard the complainant screaming, saying AHelp me,@ and heard several thumping noises she described as sounding
like somebody getting thrown against a wall. 
She also saw a red Dodge Neon speeding out of the apartment complex
parking lot and bloody shoe prints leaving the complainant=s
apartment.  Irma Garza, who lived in the
apartment directly downstairs from the complainant=s
apartment, heard an argument, voices screaming, a body falling to the floor,
and what sounded like two people leaving the apartment.

A
tip and a phone number on the complainant=s Caller ID led homicide detectives, Kennedy, Flores, and
Garretson, to appellant.  Appellant had
four outstanding traffic warrants.  The
detectives went to appellant=s grandmother=s house on January 25, 2001, to arrest him on the traffic
warrants.  Appellant=s
grandmother led the detectives to appellant, who was asleep in his
bedroom.  The detectives turned on the
lights, opened a window shade, and woke up appellant.  As appellant reached for a pair of pants, the
detectives observed a pair of noticeably bloody tennis shoes.  They arrested appellant on the traffic warrants
and seized the bloody tennis shoes.  They
subsequently learned that appellant=s grandmother owns a red Dodge Neon. 

The
detectives located the red Dodge Neon at an apartment complex where the
appellant=s girlfriend, Shante Haywood, worked.
Haywood was the estranged wife of the complainant.  She was arrested as a suspect in the murder
of her husband.








Appellant
gave a statement about his involvement in the murder. In his statement, he
admitted to the following: 1) on January 23, 2001, he and Haywood drove his
grandmother=s red Dodge Neon to the complainant=s
apartment for the purpose of getting some money, 2) he was in the car when
Haywood initially entered the complainant=s apartment, 3) he was inside the complainant=s
apartment that morning, 4) he held the complainant so that Shante
could slap and hit him, 5) when the complainant broke free from his grasp,
appellant and Haywood both called for him to come back into the room, and 6)
Haywood used a big piece of glass to try to cut the complainant.  He stated, however, that he did not know that
Athis
was going to happen.@

In
his statement, appellant also claimed that Haywood asked an individual by the
name of AChop@
if he wanted a ride when they were entering the gate at the complainant=s
apartment complex.  He asserted Chop was
in the apartment with them that morning and that Chop grabbed a piece of broken
glass and started to stab the complainant. 
Appellant maintained Haywood started screaming ANo@
and that he then pulled her out of the apartment, leaving Chop alone with the
complainant.  Appellant said they then
ran to the car and drove back to appellant=s grandmother=s house.    

Appellant
was charged with murder.  Several
detectives, investigators, and forensic experts testified at trial.  Officer Duncan, the first investigator to
arrive at the scene, testified to seeing bloody shoe prints, one set of large
ones and one set of smaller ones, directly in front of the complainant=s
apartment.

Homicide
Detective D. H. Couch, then a member of the Crime Scene Unit, testified to
seeing one set of bloody footprints heading away from the complainant=s
front door, a broken glass coffee table, and a bloody partial shoe print on the
complainant=s stomach.  He identified
three knives that were recovered from the sceneCone with a broken blade and one with a bent blade.  Detective Couch further testified to
recovering a knit cap, a pair of gloves that had been turned inside out and
left on the bedroom floor, a pair of bloody blue jeans with a ladies=
watch in the pocket, and some slacks.








Homicide
Detective Hale Kennedy testified to the following: 1) the complainant=s
ACaller
ID@
box listed the phone number registered to appellant=s
grandmother, 2) Haywood and the complainant were legally married, 3) Haywood
had a child by appellant, 4) appellant and Haywood were living together at
appellant=s grandmother=s house, 5) appellant=s grandmother owned a red Dodge Neon, and 6) appellant stated
that he was wearing the tennis shoes seized by police on the morning the
complainant was murdered. 

Homicide
Detective L.D. Garretson testified that he obtained a statement from
appellant.  The State read appellant=s
statement into evidence.  Detective
Garretson also testified the police identified ten people who were known to use
the alias AChop@ and eliminated nine of them as suspects.  He further testified that he interviewed the
tenth AChop@
in the Harris County jail.  Detective
Garretson determined that this AChop@ (whose real name was Caryl
Bloomfield or Broomfield) (hereinafter, AChop@) did meet with both Haywood and appellant.  Chop submitted to a blood test.  After interviewing Chop, Garretson eliminated
him as a suspect. 

A
latent print examiner compared appellant=s bloody tennis shoes with photos of the shoe prints found
outside of the complainant=s apartment and determined the shoe prints in the crime scene photos were made by
appellant=s shoes or shoes just like them.  A criminalist with
the HPD crime lab performed a DNA
analysis in which he compared the DNA of appellant, Chop and the
complainant.  The criminalist
determined that the blood found on appellant=s tennis shoes belonged to the complainant.  An assistant medical examiner testified to
finding shards of glass embedded in the complainant=s
body.

Chop
testified to knowing both Haywood and appellant.  He denied any involvement in the complainant=s
murder.

Appellant
did not testify at the guilt/innocense phase of his
trial and the defense rested without calling any witnesses. 








The
jury charge permitted conviction if the jury found beyond a reasonable doubt
that appellant either acting alone, or as a party with Haywood and/or Chop,
caused the death of complainant by stabbing him with a deadly weapon in the
form of either a knife or a piece of glass or that appellant either acting
alone, or as a party with Haywood and/or Chop, committed an act clearly
dangerous to human life by stabbing complainant with a deadly weapon in the
form of either a knife or a piece of glass and did thereby cause the death of
complainant.  The jury was instructed to
acquit appellant if they found he was acting in self-defense or defense of
Haywood.  The jury returned a general verdict
of guilty.  This appeal followed. 

Legal
and Factual Sufficiency

In
four points of error, appellant claims the evidence is legally and factually
insufficient to support his conviction for murder either as a principal or as a
party.  We apply different standards when
reviewing the evidence for legal and factual sufficiency.

Standards
of Review 

When
reviewing legal sufficiency, we view the evidence in the light most favorable
to the verdict and determine whether a rational trier
of fact could have found the elements of the offense beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 318‑19 (1979); Cardenas v. State, 30
S.W.3d 384, 389 (Tex. Crim. App. 2000).  If a reviewing court determines the evidence
is insufficient under the Jackson standard, it must render a judgment of
acquittal because, if the evidence is insufficient under Jackson, the
case should never have been submitted to the jury.  See Jackson, 443 U.S. at 307.  In a legal sufficiency challenge, we do not
reweigh the evidence.  King
v. State, 29 S.W.3d 556, 562 (Tex. Crim. App.
2000).








Evidence
can be factually insufficient in one of two ways: (1) the evidence is so weak
as to be clearly wrong or manifestly unjust, or (2) the finding of a vital fact
is so contrary to the great weight and preponderance of the evidence as to be
clearly wrong.   Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  These standards encompass the complete civil
appellate law formulation for factual insufficiency.  Id. 
Which standard applies generally depends on whether the complaining
party had the burden of proof at trial.  Id. at 9‑10. 
If the complaining party did not have the burden of proof at trial, then
the first or Amanifestly unjust@ standard applies.  Id. at 10.  If
the complaining party on appeal had the burden of proof at trial, then the
second or Aagainst the great weight and preponderance@
standard applies.  Id.   If the defendant challenges the factual
sufficiency of the elements of the offense on appeal, even though the State has
the burden of proof, the reviewing court must review the evidence using both
standards.  Id. at 11; see also
Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim.
App. 2001).  In other words, the
reviewing court asks whether Aa neutral review of all the evidence . . . demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the jury=s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.@  Zuliani v. State, 97
S.W.3d 589, 594 (Tex. Crim. App. 2003).

Additionally,
when a general verdict is returned, the reviewing court will examine the record
to determine if the evidence is sufficient to support a finding of guilt under
any of the allegations submitted.  If so,
the verdict will be upheld.  Rabbani
v. State, 847 S.W. 2d 555, 558 (Tex. Crim. App.
1992); Fuller v. State, 827 S.W.2d 919, 931 (Tex. Crim.
App. 1992). Thus, the State need only have sufficiently proven one of
the allegations to support the guilty verdict. 
Fuller, 827 S.W. 2d at 931.  Therefore, we must determine whether
sufficient evidence supports the finding of guilt based upon any one of the
allegations submitted to the jury. Id. 
Because we conclude the evidence supports a finding that appellant is
guilty as a party under section 7.01(a)(2) of the
Texas Penal Code, and that a deadly weapon in the form of broken glass was
used, we need not address whether he is guilty of acting individually or
whether the evidence is sufficient to find the deadly weapon used was a knife.  See Ahrens v. State, 43 S.W.3d 630, 633 (Tex. App.CHouston [1st Dist.] 2001, pet. ref=d.)

                                                                              

 








                                                                       Analysis

A
person commits the offense of murder if he: 1) intentionally or knowingly
causes the death of an individual or 2) intends to cause serious bodily injury
and commits an act clearly dangerous to human life that causes the death of an
individual.  See Tex. Pen. Code Ann.
' 19.02(b)(1)-(2)
(Vernon 1994).  A
person commits an offense under the law of parties if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense.   See  Tex. Pen. Code Ann. ' 7.02(a)(2)
(Vernon 1994). 
The thrust of appellant=s complaint is the State failed to prove he intended to inflict
serious bodily injury or death upon the complainant.  We find no merit in appellant=s
argument.            

Evidence
is legally sufficient to convict under the law of parties when the defendant is
physically present at the commission of the offense and encourages its
commission by acts, words, or other agreement. 
Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994). 
The evidence must show that, at the time of the offense, the parties
were acting together, each contributing some part towards the execution of
their common purpose.  Id.  Circumstantial evidence may be sufficient to
show that a person is a party to an offense; and, in determining whether a
defendant participated as a party, a court may examine events occurring before,
during, and after the commission of the offense.  Thomas v. State, 915 S.W.2d 597, 599‑600
(Tex. App.CHouston [14th Dist.] 1996,
pet. ref=d).  Moreover, the cumulative force of all the
incriminating circumstances may be sufficient to warrant a finding of
guilt.  See id.  The jury may infer the intent to kill from
the use of a deadly weapon.  Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). 
See also Holiday v. State, 14 S.W.3d 784, 787 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d).  Appellant was a
party to the murder if he was physically present during the commission of the
offense and encouraged its commission by acts, words, or other agreement.








Appellant
contends that the evidence is legally insufficient to support his conviction as
a party because the State failed to prove he intended for any party to inflict
serious bodily injury or death upon the complainant.  To the contrary, the State was required to
prove appellant had the intent to promote or assist Haywood and/or Chop in the
offense and actually solicited, encouraged, directed, aided, or attempted to
aid Haywood and/or Chop to commit the offense. 
See Tex. Pen. Code Ann. '
7.02(a)(2) (Vernon 1994).  To prove a party=s intent to promote or assist in
the commission of the offense, the evidence must reflect that at the time of
the offense the parties acted together, each doing some part to execute the
common design. Burdine v. State, 719 S.W.2d 309, 315 (Tex. Crim.
App. 1986).   The jury can infer
knowledge and intent from the acts, words, and conduct of the accused.  Johnson v. State, 32 S.W.3d
388, 393 (Tex. App.CHouston [14th Dist.]
2000, no pet. h.).  Moreover, proof of a
culpable mental state generally relies on circumstantial evidence.  Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.
App. 1978).  

The
evidence indicated that two people were involved in the complainant=s
murder: a neighbor testified to hearing two people leaving the apartment and
Officer Duncan testified to seeing two sets of bloody footprints leaving the
apartment.  Appellant admitted to fleeing
the murder scene with Haywood and to wearing the bloody tennis shoes the
morning of the murder.  A latent print
examiner testified that the bloody shoe prints were left by appellant=s
shoes or shoes just like them.  The
complainant=s blood was positively identified on appellant=s
tennis shoes.  Appellant admitted
restraining the complainant while Haywood assaulted him and further admitted
that after the complainant escaped appellant=s clutches, both he and Haywood tried to lure the complainant
back into the living room.  According to
appellant=s testimony, Haywood broke a large piece of glass in her hand
and attempted to stab the complainant with it. 
The complainant suffered eighty wounds;  shards of glass were found throughout
his body, including his scalp.  The
police were unable to find any evidence placing Chop at the scene of the
murder.








While
appellant claimed in his statement that Chop must have stabbed the complainant
after he and Haywood left the apartment, a rational jury could have disbelieved
that statement and found that appellant encouraged, aided, or attempted to aid
Haywood and/or Chop to stab the complainant. 
A rational trier of fact, viewing the evidence
in the light most favorable to the verdict, could have found that appellant was
a party to the offense of murder.  We
hold the evidence is legally sufficient to support the murder conviction.  Appellant=s first and third points of error are overruled.

Appellant
contends that the State=s evidence showing his intent was factually insufficient to
support his conviction. We disagree. In a factual sufficiency analysis, the
reviewing court is required to consider the evidence that the appellant claims
undermines the jury=s verdict.  See Sims
v. State, 99 S. W. 3d 600, 603 (Tex. Crim. App.
2003).  The evidence appellant cites as
most supportive of his claim that he did not have the requisite intent as a
party is his own statement that he Adid not know this was going to happen.@  The defense did not present evidence during
the guilt/innocense phase of the trial.  As the State correctly notes, the evidence is
not rendered insufficient simply because the defense presents a different
version of the events.  See Goodman v.
State, 66 S.W.3d 283, 284‑87 (Tex. Crim. App. 2001). 
Moreover, the jury could choose to believe or disbelieve any portion of
the witnesses= testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  From its verdict, it is clear that the jury
chose to disbelieve appellant=s statement regarding his intent.

We
must now proceed to review the evidence considered by the jury to prove the
existence of appellant=s intent.  See  Johnson,
23 S.W.3d at 7.  The State=s
evidence clearly showed that appellant was intimately involved in the murder:
1) his tennis shoes were covered in the complainant=s
blood, 2) bloody shoe prints from his shoes or shoes just like his and a set of
smaller shoe prints left a trail of blood from the complainant=s
apartment, and 3) he and Haywood fled the scene of the crime in the same
car.  In addition, the following evidence
specifically points towards appellant=s intent to assist Haywood and/or Chop in the offense: 1) he
actively restrained the complainant while Haywood hit and slapped him, and 2)
he assisted Haywood in luring complainant back into the living room after the
complainant escaped from their grasp. 








Because
appellant challenges the factual sufficiency of a guilt finding, we review the
record using both standards, giving due deference to the jury=s
assessment of the witnesses= credibility and resolution of evidentiary conflicts, and
determine that the State=s evidence taken alone is neither too weak to support the
finding nor that the proof of guilt, although adequate if taken alone, is against
the great weight and preponderance of the evidence.  See Zuliani,
97 S. W. 3d at 589; Johnson, 23 S.W.3d at 11.  Therefore, we conclude the evidence is
factually sufficient to support appellant=s conviction.  Appellant=s
second and fourth points are overruled.  

The
trial court=s judgment is affirmed.

 

 

/s/        Leslie Brock Yates

Justice

 

 

 

 

Judgment rendered and Memorandum Opinion filed July 31, 2003.

Panel consists of Justices Yates, Hudson, and Frost.

Do Not Publish C Tex. R.
App. P. 47.2(b).