Opinion issued June 8, 2006






 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01212-CR




JOSEPH JAMES SIMON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 974537




MEMORANDUM OPINION
          A jury found appellant, Joseph James Simon, guilty of aggravated robbery and
assessed punishment at 30 years’ imprisonment. In his first issue, appellant contends
that the trial court committed reversible error by allowing into evidence a news
videotape recording of his arrest. In his second and third issues, appellant contends
that the evidence was legally and factually insufficient to support his conviction
because the evidence failed to show that he ever maintained control of, or attempted
to obtain or maintain control over, personal property belonging to the complainant,
Ahmed Khan. In his fourth and fifth issues, appellant complains that the evidence
was legally and factually insufficient to support his conviction under the law of
parties because the record fails to show that he aided, assisted, or encouraged
Benjamin Guillory to commit the alleged offense. We affirm.
Background
          At approximately 2:00 a.m. on January 19, 2004, Ahmed Khan finished a cell
phone call while sitting in his car in his apartment parking lot. He looked up and saw
a man knock on the front passenger window with a gun. The man was later identified
as appellant. A second man carrying a gun appeared at Khan’s driver side window. 
This man was later identified as Benjamin Guillory. 
          Khan rolled down his windows, and both men demanded money. When he
responded that he did not have any money, the men accused Khan of lying and
threatened to kill him. While still pointing his gun at Khan, Guillory searched Khan’s
pockets for money. Once satisfied that Khan did not have any money on him,
appellant and Guillory asked if he or his friends kept guns inside their apartment. 
When Khan said that they did not, the men again threatened to kill him if he was
lying. Khan offered to go inside the apartment and bring money out to them if he had
any. The men wanted to go with Khan into the apartment and instructed him to speak
only English to his roommates. When Khan and the two men entered the apartment,
he told his two roommates, “There’s nothing to worry about. They’re my
classmates.” Guillory then followed Khan to his bedroom while appellant stood
guard at the apartment door. 
          Guillory took money out of Khan’s wallet and then asked for his ATM card and
personal identification number (“PIN”). Appellant and Guillory led Khan out of the
apartment and into Khan’s car. Khan drove, while Guillory sat in the passenger seat,
and appellant sat in the back seat. Appellant instructed Khan to drive to a nearby
bank. When they arrived at the bank, Guillory again asked Khan for his PIN and
threatened to kill him if the number was wrong. Guillory went to the bank ATM
alone, but attempted to withdraw more money than the ATM would allow in one
transaction. He returned to the car and accused Khan of lying about his PIN. After
Khan swore that he gave the correct PIN, Guillory went back to the ATM, but again
tried to withdraw more money than allowed. 
          After Khan left the apartment with appellant and Guillory, one of his
roommates, Hassan Nasir, called 911 to report that Khan had been kidnaped. He
noticed Khan’s odd behavior when Guillory and appellant were in the apartment. The
police arrived at the bank and found the men sitting in the car near the ATM. The
police instructed Khan to exit the vehicle and ordered Guillory and appellant to
surrender. Once Guillory and appellant were apprehended, the police found a gun
under the front passenger seat of the car where Guillory was sitting and another gun
under the back seat where appellant was sitting. Neither weapon was examined for
fingerprints. 
          Appellant testified at the guilt phase of trial. He testified that he was riding
around with Guillory on the night of the alleged offense. He said that Guillory had
told him that Khan owed him money. Appellant also testified that he did not know
Guillory was armed until they arrived at the ATM. He further insisted that the gun
found in the back seat of Khan’s car did not belong to him.
          The jury was authorized to convict appellant for the offense of aggravated
robbery either as a principal or under the law of parties. The jury found appellant
guilty of aggravated robbery and assessed punishment at 30 years in prison. 
Admissibility of Videotape Evidence
          In his first point of error, appellant contends that the trial court committed
reversible error by allowing a videotaped newscast of his arrest into evidence. 
Appellant argues that the admission of the videotape was highly prejudicial because
it showed him being taken into police custody. He further claims that the videotape
had no probative value because his arrest was undisputed. 
Standard of Review
          The trial court’s ruling on the admission of evidence will not be overturned
absent a clear abuse of discretion. See Moreno v. State, 858 S.W.2d 453, 463 (Tex.
Crim. App. 1993). The sufficiency of the predicate for the admission of evidence is
also within the sound discretion of the trial court. See Lee v. State, 874 S.W.2d 220,
222 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). Evidence is inadmissible at
trial where its prejudicial effect substantially outweighs its probative value. Tex. R.
Evid. 403.
          In this case, during Officer Stephen Hendrie’s testimony, the State offered the
video news clip of the arrest scene.


 The video was shown to the jury with the sound
turned off. Under Rule 403, a trial court’s analysis of the admissibility of a silent
videotape is the same as it is for still photographs. See Roy v. State, 608 S.W.2d 645,
649 (Tex. Crim. App. 1980). Motion pictures are admissible when they are properly
authenticated, relevant to an issue, and not violative of the rules of evidence for the
admissibility of photographs. See Lopez v. State, 630 S.W.2d 936, 939 (Tex. Crim.
App. 1982). As with the admissibility of still photographs, the trial court’s decision
regarding the admission of a videotape may not be disturbed on appeal absent an
abuse of discretion. See Gordon v. State, 784 S.W.2d 410, 412-13 (Tex. Crim. App.
1990). 
          The videotape in this case is a news video taken at the scene of the arrest. It
shows appellant sitting in a police car. The video in the record does have sound, but
the record indicates that the jury did not hear the actual news report. Before the video
was played to the jury, the State asked one of the investigating officers, Officer
Hendrie, “does it fairly and accurately depict both of the defendants as they appeared
those early morning hours and part of the scene that’s shown on the clip.” Officer
Hendrie answered, “Yes, ma’am.” The video was published to the jury twice without
sound. Appellant did not cross-examine any witnesses about the videotape, and the
video was not mentioned in the closing arguments of either party.
          Appellant argues that the facts surrounding his arrest were not in dispute and
his defense at trial was not mistaken identity; thus, the video had no probative value. 
Instead, appellant contends that his defense at trial was that he did not participate in
robbing Khan, although he was with Guillory the night of the robbery.                      Requiring a defendant to wear handcuffs before the jury at trial infringes his
constitutional presumption of innocence. See Dennis v. State, 925 S.W.2d 32, 40
(Tex. App. —Tyler 1995, pet. ref’d) (citing Marquez v. State, 725 S.W.2d 217, 230
(Tex. Crim. App. 1987); Clark v. State, 717 S.W.2d 910, 919 (Tex. Crim. App.
1986)). The only exceptions to the prohibition are where it is shown on the record
that there are “exceptional circumstances” or a “manifest need” for such a restraint,
Cline v. State, 463 S.W.2d 441, 444 (Tex. Crim. App. 1971), or where the encounter
is away from the courtroom and is “momentary, inadvertent and fortuitous” in nature.
Clark, 717 S.W.2d at 919.
          Although, in this case, appellant was not in front of the jury in handcuffs, the
news videotape showing him in the back of a patrol car at the crime scene allowed the
jury to view him restrained. The scene of the crime may properly be shown to the
jury as evidence, but the State must also observe the rule that the defendant be
brought before the jury “unfettered.” Lucas v. State, 791 S.W.2d 35, 55 (Tex. Crim.
App. 1989). The record must reflect “good and sufficient reason” for showing the
scene of the defendant in restraints, and, if it does not, we must find error in the
admission of the videotape. Id.
          In this case, the record reflects no facts to support the use of the video. Before
the State called Officer Hendrie to the stand, appellant’s counsel informed the court
that he had an objection that he wanted to put on the record. The following exchange
between appellant’s counsel and the trial court occurred during trial, outside the
presence of the jury:
APPELLANT’S COUNSEL: Judge, there was a news coverage of the
arrest of [appellant] on the 19th of January of this year. I believe [the
State] is going to offer into evidence a blurb of that tape that will show
the face of the defendant at the time of the arrest. And we would object
to that, Your Honor, because he’s already been identified by the victim
in the case. We predict and know that a police officer will come and
testify and say that he arrested him at the scene. And we feel that to
show this tape of him being handcuffed and put in the police car is only
offered to prejudice the jury and wouldn’t do anything probative for the
case, Your Honor.
 
THE COURT: That’s overruled.

          The State did not participate in this exchange, nor did it explain in the record
why it was important to have this videotape admitted into evidence. Because the
State did not articulate a good and sufficient reason for showing appellant in custody,
we hold that it was error for the trial court to have admitted the news videotape
showing appellant in handcuffs. 
          However, to warrant reversal of the judgment of the trial court, error must
affect the substantial rights of the parties. See Tex. R. App. P.44.2(b); Prible v. State,
175 S.W.3d 724, 737 (Tex. Crim. App. 2005). “The Rule 44.2(b) harm standard is
whether the error in admitting the evidence had a substantial and injurious effect or
influence in determining the jury’s verdict.” Hernandez v. State, 176 S.W.3d 821,
824 (Tex. Crim. App. 2005). “Substantial rights are not affected by the erroneous
admission of evidence if the appellate court, after examining the record as a whole,
has a fair assurance that the error did not influence the jury, or had but a slight effect. 
Soloman v. State, 44 S.W.3d 356, 356 (Tex. Crim. App. 2001). In determining
whether substantial rights were affected by the erroneous admission of evidence, the
question is not simply whether there was sufficient evidence to support the verdict. 
Bagheri v. State, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). Instead, the
reviewing court should consider the entire record, including testimony, physical
evidence, jury instructions, the State’s theories and any defensive theories, closing
arguments, and voir dire, if applicable. Id.
          Important factors to consider when evaluating harm include the nature of
evidence supporting the verdict, the character of the alleged error, and how it might
be considered in connection with other evidence in the case. Bagheri, 119 S.W.3d
at 763. We should also consider whether the State emphasized the error, whether the
erroneously admitted evidence was cumulative, and whether it was elicited from an
expert. Id.
          The error in question was the trial court’s admission of the news videotape
showing appellant handcuffed in police custody. Similar to the video in Dennis, the
video presented in this appeal was extremely short. See Dennis, 925 S.W.2d at 41
(“the time that restraints are visible on Dennis is extremely short”). Here, the effect
of the error is slight because the jury could have reasonably expected a suspect
arrested for aggravated robbery to be handcuffed and taken into police custody at the
scene. See Dennis, 925 S.W.2d at 41 (finding that the videotape indicates nothing
more than that the police used a customary procedure typical for an aggravated
robbery crime scene). Additionally, in Bagheri, the erroneous evidence was argued
by an expert and emphasized repeatedly during trial—particularly during closing
arguments. Bagheri, 119 S.W.3d at 763 (holding that it was fair to assume that the
erroneous admission of evidence influenced the jury or had more than a slight effect). 
Unlike Bagheri, this evidence was not argued by an expert and the State did not
emphasize the short video clip or mention it in its closing argument. Moreover, the
State introduced into evidence a gun found underneath the seat where appellant had
been sitting in Khan’s car; Khan identified appellant as one of the men who robbed
him at gunpoint; and appellant admitted being with Guillory during the commission
of the robbery. Given the strength of this other evidence, we have a fair assurance
that the error in admitting the videotape did not influence the jury, or had but a slight
effect. We hold that the appellant’s substantial rights were not violated.
          Accordingly, we overrule appellant’s first point of error.
Sufficiency of the Evidence
          In his second and third points of error, appellant contends that the evidence was
legally and factually insufficient to support his conviction for aggravated robbery,
where the evidence failed to show that appellant ever maintained control of, or
attempted to obtain or maintain control over, property belonging to Khan. In his
fourth and fifth points of error, appellant complains that the evidence was legally and
factually insufficient to support his conviction of aggravated robbery under the law
of parties because the record fails to show that he aided, assisted, or encouraged
Benjamin Guillory to commit the alleged offense. 
Standard of Review
          When conducting a legal-sufficiency review, we view the evidence in the light
most favorable to the verdict to determine whether any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152, 155
(Tex. App.—Houston [1st Dist.] 1997, no pet.). Although a legal-sufficiency analysis
entails a consideration of all evidence presented at trial, we may neither re-weigh the
evidence nor substitute our judgment for the jury’s. King, 29 S.W.3d at 562. The
jury, as trier of fact, is the sole judge of the credibility of witnesses and may believe
or disbelieve all or any part of a witness’s testimony. Reece v. State, 878 S.W.2d 320,
325 (Tex. App.—Houston [1st Dist.] 1994, no pet.). 
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W. 3d 814, 817 (Tex. Crim. App. 2004). In conducting the factual-sufficiency review, we must also employ appropriate deference to the fact finder so
that we do not substitute our judgment for that of the fact finder. See Zuniga v. State,
144 S.W. 3d 477, 482 (Tex. Crim. App. 2004). Our evaluation should not intrude
upon the fact finder’s role as the sole judge of the weight and credibility given to any
witness’s testimony. Cain v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997). 
What weight to be given contradictory testimonial evidence is within the sole
province of the fact finder because it turns on an evaluation of credibility and
demeanor. Id. at 408-09. The fact finder is entitled to judge the credibility of the
witnesses and may choose to believe all, some, or none of the testimony presented. 
Id. at 407 n.5.
Law of Parties
          The jury charge authorized the jury to find appellant guilty either as a principal
or under the law of parties. Under the law of parties, a person is criminally
responsible for the offense committed by another if, acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense. See Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 2003). Although the mere presence at the scene of a crime is not alone
sufficient to make an individual vicariously liable for a crime, it is a circumstance
that, when combined with other facts, may suffice to show that the accused was a
participant. See Ware v. State, 467 S.W.2d 256, 258 (Tex. Crim. App.1971). The law
of parties applies to the offense of aggravated robbery. See Johnson v. State, 32
S.W.3d 388, 391-92 (Tex. App.—Houston [14th Dist.] 2000, no pet.).
          A person commits aggravated robbery if he commits robbery and uses or
exhibits a deadly weapon. Tex. Pen. Code. Ann. § 29.03(a)(2) (Vernon 2003); Id. §
29.02(a)(2) (Vernon 2003) (defining robbery as intentionally or knowingly
threatening or placing another in fear of imminent bodily injury or death in the course
of committing theft). “In the course of committing theft” means conduct that occurs
in an attempt to commit theft, during the commission of theft, or in immediate flight
after the commission of theft. Id. § 29.01(1) (Vernon 2003). A person commits theft
if he unlawfully appropriates property with the intent to deprive the owner of the
property. Id. § 31.03(a) (Vernon 2005).
Analysis
          Appellant contends that the evidence is legally and factually insufficient to
prove the third element of aggravated robbery, namely, that he did not have the intent
to obtain or maintain control of Khan’s property, because there is no evidence
showing that he participated in the aggravated robbery with Guillory. We disagree. 
Because the jury was charged on the law of parties, it could have reached its verdict
by deciding that Guillory committed the elements of the offense and that appellant
acted with intent to promote or assist in the commission of the aggravated robbery.          The evidence presented shows that, minutes after the police arrived at the
scene, Khan identified appellant as one of the men who robbed him. Khan testified
that appellant was the first to knock on his car window with a gun and that both
appellant and Guillory demanded money from him. When Khan told the men that he
had no money, he explained that both men threatened to kill him if he was lying. He
testified that appellant stood at the front door of his apartment while he and Guillory
went back to his bedroom. Khan stated that, once he and the two men got into his car,
appellant instructed him to turn into the bank parking lot. He also testified that
appellant brandished his gun a couple of times during the commission of the robbery.
          Officer Hendrie testified that appellant and Guillory were in Khan’s car when
he and his fellow officers arrived at the bank. He testified that two guns were
recovered from Khan’s car; one under the passenger seat where Guillory was sitting
and one under the back seat where appellant had been sitting. A jury could have
reasonably believed that the gun under appellant’s seat belonged to him and was used
by him to threaten Khan during the commission of the robbery. See King, 29 S.W.3d
at 562. 
          Appellant testified that he accompanied Guillory and Khan into Khan’s
apartment. He said that he did not follow them into Khan’s bedroom because he was
not sure what they were going back to the bedroom to do. Under the law of parties,
a jury could reasonably infer that appellant “assisted” Guillory by standing guard at
the apartment door while Guillory was attempting to steal from Khan. Appellant
testified that he initially thought Guillory was trying to collect a debt from Khan. He
admitted that he realized Guillory was robbing Khan once he saw Guillory point a
gun to Khan’s neck and demand the correct PIN. Appellant testified that he saw
Guillory make several attempts to withdraw money from the bank ATM with Khan’s
bank card and PIN. 
          Viewing all of the evidence in the light most favorable to the verdict, we
conclude that a rational fact finder could have found the essential elements of the
offense beyond a reasonable doubt. See King, 29 S.W.3d at 562. Viewing the
evidence in a neutral light, we also conclude that the evidence supporting appellant's
conviction is not too weak to support the finding of guilt beyond a reasonable doubt;
nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard
could not have been met. See Escamilla, 143 S.W.3d at 817. We hold that the
evidence is both legally and factually sufficient to support appellant’s conviction.
          We overrule appellant’s second, third, fourth, and fifth points of error.
Conclusion
          We affirm the judgment of the trial court.

                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.4.